WILLIAMS, Judge.
This appeal arises from a petition for injunctive relief filed by plaintiff, John W. Dussouy, Jr., [“plaintiff”], against defendant, Gulf Coast Investment Corporation [“defendant”], a mortgage broker with its principal offices in Houston, Texas.
Plaintiff petitioned the court below for relief from defendant’s policy requiring a hazard insurance policy be furnished, rather than a binder of insurance, for all their mortgage loan closings, as was customary *1081 in the community. The facts in this litigation are undisputed. Plaintiff alleged in his petition, that he was consulted in 1977, by a client regarding insurance to be placed on residential property the client had agreed to purchase. This consultation, according to plaintiff, took place approximately two months before plaintiff was notified of the time and place of the act of sale for said property. Plaintiff further alleged that he was prevented from insuring the subject property because of defendant’s arbitrary refusal to accept a binder of insurance on such short notice.[1] Plaintiff alleged he could not obtain a policy of insurance in that short period of time, and therefore attempted to furnish a binder of insurance instead. Defendant refused to accept the proffered insurance binder since defendant required a policy of insurance be provided for all mortgage loan closings. Plaintiffs client was required to obtain a policy of insurance from another source to satisfy defendant’s closing requirements. Plaintiff was thereafter not a party to this act of sale, nor are plaintiff’s clients party to this litigation.
The trial court found that a binder of insurance was not the same as an insurance policy; that an individual, regardless of his motive, has an absolute right to refuse to deal with another; and that defendant had not maliciously or wantonly interfered with plaintiff.
The trial court also found that defendant had a sufficiently reasonable business purpose in requiring policies of insurance rather than binders of insurance. On these facts, the trial court refused to enjoin defendant from requiring policies of insurance to cover their mortgages and found no restraint of plaintiff’s trade.
The issues on appeal are as follows: was defendant’s business policy requiring hazard insurance to cover property, with which they dealt as mortgage bankers, a reasonable business practice; was their requirement that a policy of insurance be supplied a tortious interference with plaintiff’s business; and lastly, was defendant’s conduct a malicious or wanton interference with plaintiff’s business so as to constitute a violation of La.R.S. 51:121 et seq., thus entitling plaintiff to injunctive relief?
At the outset, we can conclude that no irreparable injury has been suffered by plaintiff. La.C.Civ.P. art. 3601. In the evidence adduced at trial, plaintiff and his employer, John W. Dussouy Insurance Agency, Inc., was not prevented from doing business with defendant, or anyone else, either before the incident in question, or thereafter up to the date of trial. The evidence at trial showed that there were 34 other instances where plaintiff, or his employer, had done business with defendant and there was no indication that defendant would decline to do business with plaintiff or his employer in the future. Plaintiff and his employer apparently met all of defendant’s requirements in these transactions.
In his testimony at trial, plaintiff stated that he was aware that in the normal course of business with defendant and other mortgage brokers in the community, that a policy of insurance was required instead of a binder of insurance. He also testified that he knew of insurance companies, with which his employer did business, which permitted an agent to type his own policy of insurance without first submitting it to the insurance company. Plaintiff’s own expert witness, Roger Holden, explained that the particular insurance company that plaintiff intended to place the policy with, Traveler’s Insurance Company, has an expedited program which permits an agent to issue his own policy within 30 to 45 minutes. Plaintiff was well aware of the requirements of the mortgage banking industry in this community requiring a policy of insurance to cover residential real estate sales and could have complied with this custom. Apparently, plaintiff could have prepared a policy of insurance to cover the subject property, but attempted instead to provide a binder of *1082 insurance which he knew, or should have known, would not be acceptable to defendant.
In an identical action, this plaintiff sued defendant in Federal Court under Federal law seeking ostensibly the same relief. Dussouy v. Gulf Coast Investment Corporation, 660 F.2d 594 (5th Cir.1981) reh. den. The Federal court there held that an individual, regardless of his motive, has an absolute right to refuse to deal with another, Id. at 601; McGee v. Collins, 156 La. 291, 100 So. 430, 435 (1924); Joslyn v. Manship, 238 So.2d 20 (La.App. 1st Cir.1970) writ ref., 256 La. 883, 239 So.2d 541 (La.1970). The right to influence others not to deal, however, is not as broad. Dussouy, supra; see also Graham v. St. Charles Street Railroad, 47 La.Ann 1656, 18 So. 707 (La.1895); Lewis v. Huie-Hodge Lumber, 121 La. 658, 46 So. 685, 687 (La.1908) (dicta); Joslyn, supra; Restatement (2d) of torts Sections 766B, 767 (1979); and see generally Developments in the Law—Competitive Torts, 77 Harv.Law Rev. 888, 926-27 (1964). In that situation, Louisiana law protects the businessman from “malicious and wanton interference,” permitting only interferences designed to protect a legitimate interest of the actor. Lewis, supra; McGee, supra; W. Prosser, Handbook of the Law of Torts, Section 130 (4th Ed.1971). There is no evidence in the record that defendant influenced anyone not to deal with plaintiff.
Plaintiff attempted to provide his customers and the mortgage company a binder of insurance whose term was for a duration of 14 days, unless sooner cancelled by the insurance company. There is no provision for notification when a binder of insurance is about to expire or will not be replaced by a numbered insurance policy. Plaintiff’s expert witness, Mr. Holden, testified that there was no obligation under the terms of the binder that required an insurance company to issue a policy of insurance to maintain coverage on the subject property. This uncertainty creates a legitimate business concern on the part of defendant. A representative of defendant, Mr. Hulbirt, testified that the policy of his company has been to refuse to accept insurance binders. The thrust of his testimony was that the closing instructions submitted to the Notary passing the act of sale required that an actual policy of insurance be presented at the closing. In its reasons for requiring a policy of insurance be submitted at the loan closing, defendant showed that a policy of insurance affords greater protection than a temporary binder, and mortgage investors for whom defendant only acts as a broker, require insurance policies to protect their investment.
The evidence showed that acceptance of an insurance binder is not compatible with the practice of mortgage loan closing for reasons of both time and money. The mortgage company’s investors have established certain requirements which must be met for them to accept placement of a mortgage loan. There is sufficient evidence in the record to justify defendant’s policy against accepting a temporary binder of insurance because it requires as full review of the provisions and coverages provided, but defendant would still be required to hold its file open until a permanent policy of insurance was provided. Holding the file open would necessitate a second review of the policy to determine whether it adequately covered the same property in question and provided for continuous coverage without lapsing. The mortgage company’s second review to examine essentially two identical policies of insurance would be a costly delay in terms of turn around time from loan initiation to the placement of the loan with the mortgage investor and therefore results in greater expense in the completed transaction.
We find that the trial court’s determinations that plaintiff’s business was not tor-tiously interfered with and conclude that defendant’s actions were the result of bona fide business policies to be reasonable based upon the evidence presented at trial. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
We also find, from the evidence adduced at trial, that the trial court could *1083 reasonably conclude defendant did not act in a wanton or malicious manner in refusing to accept plaintiff’s attempt to supply a binder of insurance for the subject transaction. Malice is a necessary element of the cause of action herein. La.R.S. 51:121, et seq.; Dussouy; supra; Deon v. Kirby Lumber Company, 162 La. 671, 111 So. 55 (La.1927) reh. den.; Joslyn, supra, citing Graham v. St. Charles Street Railroad Company, supra. The defendant has presented enough evidence to refute plaintiff’s claim that he was tortiously interfered with; or that defendant acted to restrain trade as defined under the statutes of this state. The evidence shows that defendant had no intention of refusing to do business with plaintiff and was, up to trial, doing regular business with John W. Dussouy Insurance Company, Inc. We note that defendant never specified to its mortgagors which insurance company and which insurance agent they were to do business with. There was ho proof or evidence to show that defendant at any time dictated to its borrowers with whom they would be permitted to do business and who was acceptable to defendant. To the contrary, the instructions of defendant merely dictated what form of insurance was required of the borrowers to eventually close their mortgage transaction. All that defendant mandated were that the requirements of their closing instructions be complied with, i.e. the furnishing of a policy of hazard insurance, before the act of sale and disbursement of the funds.
We affirm the judgment of the court below and assess costs against plaintiff.
AFFIRMED.

. Plaintiff was notified of the act of sale, by the notary involved, the day before it was scheduled to occur.