498 So.2d 272 (1986)
Robert B. McCOIN
v.
William C. McGEHEE and Gilbert Insurance & Associates, Inc.
No. CA 85 1082.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
M. Reggie Simmons, Franklinton, for plaintiffs-appellants Robert B. McCoin & Alan McCoin.
*273 Roger M. Fritchie, Baton Rouge, for defendants-appellees William C. McGehee and Gilbert Ins. & Associates, Inc.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
Plaintiff, Robert B. McCoin, and intervenor, Alan McCoin, appeal the trial court judgment in favor of defendants, William C. McGehee, Gilbert Insurance & Associates, Inc. (Gilbert), and Commercial Union Insurance Company, dismissing all claims for damages based on libel, slander and tortious interference with business.
Plaintiff, a resident of Bogalusa, is an independent claims adjuster and property damage appraiser whose services have been used by various insurance companies for more than thirty-five years. He employes his son Alan (intervenor) as an appraiser. McGehee is an insurance agent and, at the time this suit arose, was a co-owner of Gilbert, a general insurance agency located in Bogalusa. As such, McGehee sold insurance policies for Commercial Union as well as numerous other insurance companies. Additionally, Commercial Union wrote Gilbert's liability insurance policy.

BACKGROUND
Over the years, McCoin has served as an adjuster and/or appraiser, and Alan as an appraiser, on claims that arose on policies issued through Gilbert. McCoin was hired by the insurance company needing the claims work, and was considered a representative of the insurance company, not of the insurance agency.
In the course of their professional dealings, ill feelings arose between McCoin and McGehee, with McGehee feeling that he and his insureds were not receiving the cooperation he believed necessary on certain claims that McCoin had handled. On the other hand, McCoin felt that McGehee had no reason to be unhappy. The record reveals that McGehee took a personal interest in claims for his company's insureds, which was not unusual. The record also shows that it is not uncommon for agents to ask insurance companies to use certain adjusters and that insureds and their agents are sometimes dissatisfied with the handling of claims.
Three incidents were noted wherein McGehee became upset with McCoin's or Alan's attitudes and actions on claims handled by them. On one occasion, Alan was asked by the insured to leave the insured's premises, and the insured then called McGehee and asked that McCoin not handle any claims for him in the future. The two other incidents involved alleged telephone conversations between (1) McCoin and McGehee on a claim for the City of Bogalusa and (2) Alan and McGehee on an appraisal for an individual insured. McGehee claimed that McCoin and Alan were rude and uncooperative; McCoin and Alan denied the allegations. Following these incidents, McGehee conferred with Norman Terry, the vice-president in charge of claims with MGA, one of several insurers for the City of Bogalusa. McGehee asked Terry if he would consider not assigning McCoin, because of a personality clash, to claims arising out of their policy issued through Gilbert to the city. McGehee specified another claims service that he would prefer to use on the city's account. Terry declined McGehee's request, and when the policy came up for renewal shortly thereafter, McGehee switched the policy to a competitor of MGA who agreed to use the claims service specified by McGehee. McGehee also contacted Henry Hawes, claims manager for Commercial Union, advised Hawes that he was having some problems with McCoin on a couple of claims for his insureds, and asked Hawes to refrain from assigning claims for Gilbert's insureds to McCoin until the problems were resolved. Hawes agreed and recalled two claims previously assigned to McCoin.
Thereafter, McCoin filed this suit against McGehee individually and as an agent for Gilbert, alleging he suffered business losses because McGehee maliciously interfered *274 with his business activity. McCoin claimed McGehee defamed McCoin in conversations with insurance company personnel and that McGehee told several insurance companies, including the two noted above, that McGehee would no longer write policies for the companies who continued to use McCoin on claims filed by Gilbert's insureds. McCoin also prayed for permanent injunctive relief. After the suit was filed, Commercial Union, as Gilbert's liability insurer, decided to terminate all business relationships with McCoin. McCoin later amended his suit to include Commercial Union as a defendant. Alan intervened in the suit, claiming, in addition to defamation, that he was being damaged by McGehee's actions because he would take over his father's business at some unspecified time in the future. After hearing the witnesses and reviewing the evidence, the trial court concluded that there was no communication between defendant McGehee and any representative, agent or employee of an insurance company that could be interpreted as defamation against either of the McCoins. The trial court also found that the defendants were not responsible for any tortious business interference against the McCoins and dismissed all of their claims, as well as their request for a permanent injunction.
Plaintiff and intervenor appeal the trial court's failure to find tortious interference with plaintiff's business, alleging the judgment was clearly contrary to the law and the evidence. They contend that McGehee interfered with McCoin's business by threatening to cease doing business with any insurance company that would not stop assigning claims for Gilbert's customers to McCoin. Moreover, they allege the trial court erred in allowing certain evidence into the record while keeping other evidence out and in refusing to allow them to impeach one of their own witnesses.

STANDARD OF APPELLATE REVIEW
Ordinarily, trial court findings of fact by judge or jury are reviewed on appeal under the manifest error (clearly wrong) standard as established in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where some legal error (such as claimed in this appeal in regard to improper admission or omission of evidence or improper refusal to allow the impeachment of a witness) interdicts a trial court's findings of fact, the appellate court no longer applies the manifest error standard but must make its own independent review of the record if it is complete, and determine the facts by a preponderance of the evidence. Picou v. Ferrara, 483 So.2d 915 (La.1986); Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
After a thorough review of the entire record, we conclude that the same factual findings will be reached whether we use the manifest error standard or independent review standard. Therefore, it is unnecessary to rule on the assignments of error relating to the fact-finding process because the merits (or lack thereof) of these assignments will not affect the final results.

TORTIOUS INTERFERENCE
An individual, regardless of his motive, has an absolute right to refuse to deal with another; however, his right to influence others not to deal is not as broad. Dussouy v. Gulf Coast Inv. Corp., 433 So.2d 1080 (La.App. 4th Cir.1983), writ denied, 440 So.2d 757 (La.1983). A businessman is protected from malicious and wanton interference, and only interference designed to protect legitimate interests of the actor is permitted. Utisca Enterprises, Inc. v. Costello, 434 So.2d 137 (La.App. 5th Cir.1983). Thus, the plaintiff in a tortious interference with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff. 434 So.2d at 140. We conclude that the record adequately supports the trial court's findings that the McCoins did not prove tortious interference.
The record is clear that McGehee and Gilbert ceased dealing with MGA, but that MGA was not influenced and did not stop using McCoin. Testimony indicated that Gilbert made a business decision in *275 requesting the use of another adjusting firm for Bogalusa's claims since that other firm already handled claims on all other policies issued to the city by Gilbert.
A taped conversation between McCoin and Joe Fernandez, claims manager for Southern States General Agency, indicated that Fernandez stopped using McCoin because some unidentified agents told Fernandez that if Southern wanted the business, they would have to use somebody other than McCoin. However, Fernandez testified on the stand that he did not remember any letter from or any conversation with McGehee relative to ceasing to use McCoin's firm, that he had received some complaints about McCoin's handling of claims, and that while he had not assigned any claims to McCoin recently, McCoin was still on the approved adjusters list. The record clearly shows that Commercial Union's decision to stop assigning any claims at all to McCoin was reached after this suit was filed and was based on the insurance company's position as Gilbert's liability insurance carrier. Therefore, we conclude that the McCoins have failed to show that McGehee improperly influenced others and caused them not to deal with McCoin.
McGehee admits asking Hawes (Commercial Union) to refrain from assigning McCoin to claims for Gilbert's insureds until the problems McGehee perceived were resolved. McCoin quashed any meeting with McGehee and his partner in regard to the perceived problems and proceeded to file the instant suit. We agree with the trial court's determination that McGehee's and Gilbert's actions in seeking the use of an insurance adjustment firm other than McCoin's is a legitimate and protectable business interest. As noted by the trial court, "[i]n a business of this nature a person must be satisfied that the claims of his insureds are being handled quickly, promptly, and courteously."
For the foregoing reasons, we affirm the judgment of the trial court in its entirety. Costs of this appeal are to be borne by the plaintiff and intervenor.
AFFIRMED.