557 So.2d 1011 (1990)
Kim B. DAVIS
v.
SOUTHERN SAVINGS ASSOCIATION.
No. 89-CA-0918.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
*1012 Robert N. Ryan and P. Bruin Hays, III, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendant/appellee.
Kern A. Reese, New Orleans, for plaintiff/appellant.
Before LOBRANO, PLOTKIN and BECKER, JJ.
LOBRANO, Judge.
This appeal arises out of a suit for defamation filed by plaintiff-appellant, Kim B. Davis (Davis) against her former employer, Southern Savings Association (Southern).
FACTS:
On July 15, 1985, Davis was employed as a teller at Southern's main office on St. Charles Avenue. On that date, Davis' boyfriend, Arthur O. Lawrence, brought in a non-negotiable instrument in the amount of $896.71 written by Hibernia National Bank to credit the account of Arthur O. Lawrence. Stamped across the front of the instrument was "NON-NEGOTIABLE/NOT A CHECK". Davis prepared a deposit slip to deposit part of the proceeds into her and Lawrence's joint account *1013 and to receive the rest in cash. Pursuant to company policy which forbid employees to handle transactions involving their own accounts, Davis turned the transaction over to another teller, Lynn DeMarcay, for completion. DeMarcay failed to notice the instrument was not a check, entered the deposit into Davis' account and tendered back to her cash in the amount of $410.00.
On July 18, 1985, the error was caught and brought to the attention of George Binder, Southern's executive vice president and officer in charge of personnel decisions. After reviewing Davis' personnel file which contained three prior reprimands, Binder decided to terminate Davis. The following day he directed Jan Walser, personnel director, to prepare a termination notice for Davis. The notice was given to Davis on July 19, 1985 and read as follows:[1]
"You are being terminated because you had another teller deposit a non-negotiable (not a check) item to your personal checking account. At which time you were given $410.00 back in change. This accurred [sic] on Monday July 15, 1985. The bank Southern Savings deposits its checks with has advised the association that it was a debit advise [sic] and not a check. You have been a teller since your re-hire on January 10, 1983 and you should have known that the item was not a check. In fact the item states it is NOT A CHECK. The copy is attached. Since you have received three warning notices prior to this you are being terminated as of July 19, 1985. The warning notices are attached."
The original of this notice was forwarded to the State Office of Employment Security (OES) in Baton Rouge as required by law.
Davis applied for unemployment compensation. Southern's policy was to challenge all claims for unemployment. In keeping with that policy they prepared a response to Davis' claim and returned it to the OES.[2] The response read as follows:
"2. REASON FOR SEPARATION FROM YOUR EMPLOY:
Termination was due to passing an item not a check, thru her account and receiving cash back of said item. Three prior warnings have been given and company policy states that after three warnings an employee is then terminated."
In response to Southern's challenge, the OES sent a "Notice to Appear For Hearing" which read in pertinent part:
"IN DETERMINING THE ELIGIBILITY FOR UNEMPLOYMENT INSURANCE BENEFITS THE ISSUE(S) BEFORE THE REFEREE IS/ARE THE CORRECTNESS OF THE FOLLOWING:
The claimant was discharged from employment because of being in violation of company policy, i.e. having another teller deposit a non-negotiable item in her checking account, which is misconduct connected with the employment. [R.S. 23:1601(2)]
or
The claimant was discharged from employment because of misappropriation of funds which is aggravated misconduct connected with the employment. [R.S. 23:1601(2)]
The issue is cancellation of wage credits will be considered."[3]
Davis filed suit alleging that the language contained in Southern's notice of separation (Davis 4) and their response to her claim with the OES (Davis 5) constitutes defamation and the proof of such is clearly manifested by the OES's response (Davis 6) that Davis may have misappropriated funds, a criminal act.
The case was tried before a judge on December 21, 1988. At the conclusion of Davis' case, the trial judge granted Southern's motion for directed verdict and dismissed her suit finding that she had not *1014 proved her claim of defamation by a preponderance of the evidence.
Davis appeals the trial court's judgment alleging the following assignments of error:
1) The trial court erred in not finding Southern's words libelous per se.
2) The trial court clearly erred in granting Southern's motion for directed verdict because Davis clearly established that the words transmitted by Southern were libelous per se and Southern should have been required to meet its burden under La.R.S. 13:3602.
In a suit for defamation the plaintiff must prove by a preponderance of the evidence the following elements: defamatory words; publication; falsity; malice; actual or implied; and resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980); O'Dell v. Deich, 496 So.2d 1074 (La.App. 4th Cir. 1986).
Davis contends that the reason given for her termination in Davis 4 and Davis 5 constitutes libel per se. She argues that this fact is proved by the OES's assumption in Davis 6 that she may have misappropriated funds. We disagree.
A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community. Defamatory communication violates a person's right to good reputation and gives rise to a cause of action to recover damages because of the violation. Freeman v. Cooper, 414 So.2d 355 (La.1982).
The intent and meaning of an alleged defamatory statement must be ascertained, not only from the supposed defamatory words, but from a consideration of the entire statement as well as the circumstances of its publication. The test is the effect it is fairly calculated to produce and the impression it would naturally engender in the minds of the average person to whom it is communicated. Taylor v. Town of Arcadia, 519 So.2d 303 (La.App. 2nd Cir.1988), writ den. 522 So.2d 1097 (La. 1988).
Defamatory statements are divided into two groupsthose which are defamatory per se and those which are susceptible of a defamatory meaning. Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4th Cir. 1985). A statement is considered defamatory per se when it has a "... natural tendency to injure a person in his occupation or to injure his reputation, even without considering extrinsic facts or surrounding circumstances, ..." Lemeshewsky v. Dumaine, supra, at p. 975.
Defenses to a defamation action include truth, justification and privilege. Privileges are either absolute or conditional. A conditional or qualified privilege is applicable to communications made in good faith, on a subject matter in which the communicator has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty. Elmer v. Coplin, 485 So.2d 171 (La. App. 2nd Cir.1986), writ denied 489 So.2d 246 (La.1986).
In Boyd v. Community Center Credit Corporation, 359 So.2d 1048 (La.App. 4th Cir.1978), this Court held that a qualified privilege exists between an employer and the state OES.
In Boyd, supra, the circumstances of the communication were almost identical to the instant case. The Court found that under circumstances which might otherwise be deemed defamatory, statements are protected from an action in defamation if the circumstances of the communication show an underlying policy incentive for according the protection. The Court stated:
"The interest of public welfare and social necessity dictate that an employer not be unreasonably restricted when he is required to furnish information necessary for the state agency to determine in a quasi-judicial proceeding a terminated employee's eligibility for unemployment compensation benefits. The party furnishing the information must be free to make a complete and unrestricted communication, without fear that he will be held liable for defamation if the good faith communication turns out to be inaccurate, subject to the requirement that *1015 the communication be made in good faith, be relevant to the subject matter of the inquiry, and be made to a person with a legitimate interest in the subject matter." (citation omitted) at p. 1050.
In the instant case, Southern was required by law to furnish information on the circumstances surrounding Davis' termination for use in a quasi-judicial proceeding. Southern responded in reasonable, accurate, truthful and non-malicious language in good faith to the proper official in the proper manner to be used in confidence. The response was not defamatory per se nor could it be susceptible of a defamatory meaning. Davis has not presented a scintilla of evidence to the contrary. Even assuming arguendo that Southern's response was defamatory, the communications with OES are privileged under the circumstances of this case. See also, Beauchamp v. Eckerd's Drugs of Louisiana, Inc., 533 So.2d 390 (La.App. 4th Cir.1988), writ denied, 535 So.2d 743 (La. 1989).
For the above and foregoing reasons the judgment of the trial court is affirmed. Appellant to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] This document was introduced into evidence as "Davis 4".
[2] This document was introduced into evidence as "Davis 5".
[3] This document was introduced into evidence as "Davis 6".