609 So.2d 972 (1992)
Jack BOLANOS
v.
William G. MADARY, II and International Coffee Corporation.
No. 92-CA-0083.
Court of Appeal of Louisiana, Fourth Circuit.
November 24, 1992.
Rehearing Denied January 13, 1993.
*974 Louis R. Koerner, Jr., New Orleans, for plaintiff/appellant.
William G. Madary, II, Carlos Nottebohm, Intern. Coffee Corp., unrepresented/defendants/appellees.
Before BARRY, WARD and JONES, JJ.
BARRY, Judge.
Jack Bolanos appeals a summary judgment in favor of William G. Madary II and International Coffee Corporation (I.C.C.). Bolanos seeks damages for defamation, intentional infliction of emotional distress, and tortious interference with business relations. We affirm.
Bolanos' claims are based on letters written by Madary on behalf of his corporation, I.C.C., the largest creditor and a minority shareholder of Bolanos' bankrupt coffee roaster corporation, Old Time Enterprises (O.T.E.). The letters were written to the Department of Defense (D.O.D.), the Small Business Administration (S.B.A.), Representatives W.J. Tauzin and Bob Livingston, among others, questioning alleged "windfall profits" received by O.T.E. from government agencies which were allegedly misused by Bolanos. Letters to the S.B.A. questioned certification of O.T.E. in the federal 8(a) program.
Madary's correspondence with the D.O.D. and the congressmen questioned O.T.E.'s use of taxpayer money. Madary claimed that D.O.D. accepted bids from O.T.E. for the current price of coffee beans, but when O.T.E. purchased the beans the market price for the beans had substantially declined. Madary claims that O.T.E. received the original price for the beans but did not remit the excess profit to the bankruptcy trustee.
*975 Letters to Livingston and Tauzin (which were forwarded to the S.B.A.) complained that O.T.E. and Bolanos violated the 8(a) and Small Disadvantaged Business Rules.[1] In a letter dated September 14, 1988 Madary stated that O.T.E. received $243,500 from the 8(a) program which was forgiven in 1987. Madary further complained that the S.B.A. promised O.T.E. an $1.8 million 8(a) contract even though O.T.E.'s certification had expired, and the "windfall profits" should be investigated. He claimed O.T.E. reported no profit but paid its officers and not its creditors, shareholders or the government.
In an August 2, 1989 letter Madary restates some of the above allegations and adds that Bolanos and "others outside of the corporation" are beneficiaries of the "windfall profits". Madary notes that O.T.E.'s 8(a) S.B.A. extension had been denied but would be reinstated through 1993.
R.L. Molino, Executive Director of the Acquisition Management, Planning and Support Defense Logistics Agency replied to Madary that there was an excess profit received by O.T.E. and the excess was refunded.
Ms. Janita Stewart, manager of the 8(a) program, stated that Madary's letters contained inaccuracies and misstatements which, if true, could result in O.T.E.'s termination from the program.
Bolanos claims that the letters are defamatory and intended to inflict emotional distress and he claims mental and physical damages. He also claims that Madary's letters tortiously interfered with his relations with the S.B.A. and D.O.D.
Bolanos submits that summary judgment is inappropriate because the evidence is subject to conflicting interpretations and questions of motive, intent, good faith and knowledge.

SUMMARY JUDGMENT
A motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact. La.C.C.P. art. 966; Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Any reasonable doubt should be resolved in favor of a trial on the merits. Id. at 583. As Bolanos points out, summary judgment is rarely appropriate on subjective facts such as intent, motive, malice, knowledge or good faith. Id. Facts are "material" if they are determinative of the outcome of the dispute. Id.

DEFAMATION
The essential elements of a defamation action are: defamatory words; publication or communication to a person other than the one defamed; falsity; malice, actual or implied; and injury. Williams v. Touro Infirmary, 578 So.2d 1006, 1009 (La.App. 4th Cir.1991). Statements are either defamatory per se or subject to a defamatory meaning. A statement is defamatory per se if it imputes a crime to another, and the defamed person need not prove the elements of falsity and malice. Beauchamp v. Eckerd's Drugs of Louisiana, 533 So.2d 390, 391 (La.App. 4th Cir. 1988), writ denied, 535 So.2d 743 (La.1989). Madary's statements as to the 8(a) program do not impute criminal activity to Bolanos and are not defamatory per se.
Defamatory words are those which tend "... to harm the reputation of another so as to lower him in the estimation of the community." Davis v. Southern Savings Association, 557 So.2d 1011, 1014 (La. App. 4th Cir.1990). Janita Stewart stated that the communications did not tarnish Bolanos' reputation with the S.B.A. Bolanos admitted that he did not know of anyone who felt that his reputation had been diminished because of the letters. Madary's statements apparently reflect his lack of understanding of the 8(a) program.[2] *976 We conclude that the statements as to the 8(a) program do not amount to defamatory words.
The statements regarding the misuse of "windfall profits" could be construed to impute fraud and may be categorized as defamatory per se.
The defenses to a defamation action include truth, justification and privilege. Davis, 557 So.2d at 1014. Resolving all doubt against the mover, and in light of the reply letter of R.L. Molino that there were no improprieties by Bolanos, we conclude that the defamatory statements are not true.
The theories of justification and privilege overlap. A qualified privilege exists when the communication is made in good faith, on a subject matter in which the person communicating has an interest or in reference to which he has a duty, to a person having a corresponding interest or duty. Melancon v. Hyatt Corporation, 589 So.2d 1186, 1189 (La.App. 4th Cir.1991), writ denied, 592 So.2d 411 (La.1992). In this context, "good faith" means having reasonable grounds for believing the statement is true. Id.
Madary submitted proof to show that he had sufficient reason to believe excess profits were realized from the government contract. In one of Bolanos' federal claims against Madary the attorney for O.T.E. stated:
[T]he government has full knowledge of excess profits that are realized in a contract when the cost of raw coffee beans declined from the date of the award to the date that the coffee was purchased by the debtor. The debtor then negotiates with the government over what percent of this excess profit will be retained by the debtor and what percent will be refunded to the government. (Emphasis added).
Several letters from R.L. Molino indicate that O.T.E. purchased supplies to perform the contract after the coffee market experienced a substantial downturn. A letter shows that O.T.E. did receive a profit from the contract which was remitted by O.T.E. A later letter to Madary from Charles McDonald of D.O.D. states that "some irregularities" in the administration of the O.T.E. contract existed and remedial action would be taken. Madary met his burden of showing that he was in good faith and believed his allegations.
Madary and I.C.C. had interests, as taxpayers and creditors of O.T.E., to determine how O.T.E. accounted for its excess profits. Madary conveyed his concerns to parties with corresponding concernsrepresentatives of the government. Madary wrote to the congressmen because he was admonished by the bankruptcy judge to do so if he objected to O.T.E.'s disclosure statements. Thus, the communications regarding the alleged "windfall profits" are privileged.
The motion for summary judgment was properly granted as to the defamation claim as there is no genuine issue of material fact.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
To recover for intentional infliction of emotional distress Bolanos must establish: (1) that the conduct was extreme and outrageous; (2) that the emotional distress was severe; (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result. White v. Monsanto, 585 So.2d 1205, 1209 (La.1991).
The conduct must be so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.
* * * * * *
Liability only arises where the mental suffering or anguish is extreme.
Id., at 1209, 1211.
Bolanos claims that Madary's letters caused his business to suffer. Bolanos *977 has no standing to recover for an injury to O.T.E. La.C.C.P. art. 681. The shareholders of a corporation may not recover for mental anguish and physical suffering from wrongful acts to a corporation. L & L Industries v. Progressive National Bank, 535 So.2d 1156, 1158 (La.App. 2d Cir.1988). See also Hinchman v. Oubre, 445 So.2d 1313 (La.App. 5th Cir.1984) and Mente and Company v. Louisiana State Rice Milling Company, 176 La. 476, 146 So. 28 (1933).
Bolanos also claims that he has suffered dizziness, insomnia, blackouts, headaches, nausea, diarrhea, heart palpitations, severe depression and suicidal thoughts. Bolanos failed to present any material fact relating to emotional and physical distress. Madary's letters do not amount to extreme and outrageous conduct.
Even if Madary's conduct was extreme and outrageous, it is privileged because liability does not attach if the actor does no more than insist on his legal rights in a permissible way, even though he is aware that such insistence will cause emotional stress. White, 585 So.2d at 1210. Madary only informed government officials of what he believed to be fraud by O.T.E. As the major creditor in O.T.E.'s bankruptcy, Madary had a right to determine that O.T.E.'s assets were not diverted.

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Bolanos claims that the actions of Madary constituted "a tortious interference with the contractual relationship between petitioner and the Small Business Association", as well as the D.O.D. To recover for an invasion of business interests, Bolanos must show that Madary and I.C.C. "improperly and maliciously ..." influenced these government entities not to deal with him. Muslow v. A.G. Edwards and Sons, Inc., 509 So.2d 1012, 1020 (La.App. 2d Cir. 1987), writ denied, 512 So.2d 1183 (La. 1987); McCoin v. McGehee, 498 So.2d 272, 274 (La.App. 1st Cir.1986).
Bolanos' claim is unsubstantiated. He admitted in interrogatories that Madary's actions did not interfere with any contract with the S.B.A. or D.O.D. Janita Stewart's testimony verified that O.T.E.'s 8(a) certification was never terminated.
Bolanos had no personal contract with the S.B.A. or the D.O.D. Any claim by O.T.E. (not a party to this lawsuit) would be precluded by the bankruptcy settlement.
Bolanos also raises a claim under the Louisiana Unfair Trade Practices and Consumer Protection Law (La.R.S. 51:1401 et seq.). He contends that the 8(a) contracts were delayed due to the actions of Madary and resulted in damage.
Although Janita Stewart stated that Madary's letters might have caused the delay, Bolanos does not explain how long the delay lasted and, importantly, failed to assert that he suffered any "ascertainable" (actual) loss of money or property as a result of the delay. See La.R.S. 51:1409.
An "unfair trade practice" has been defined as "a practice that is unethical, oppressive, unscrupulous, or substantially injurious." Moore v. Goodyear Tire and Rubber Company, 364 So.2d 630, 634 (La. App. 2d Cir.1978). Madary's correspondence with the government agencies and officials does not fall to that level.

SANCTIONS
In the motion for summary judgment, Madary and I.C.C. prayed that the court dismiss the suit with prejudice under La. C.C.P. art. 863 and impose the payment of costs and attorney's fees upon Bolanos and his attorney Louis Koerner. The United States District Court imposed Rule 11 sanctions against Mr. Koerner in the amount of $25,000. Our lower court dismissed the suit with prejudice and did not impose costs and fees.
On appeal Mr. Madary and I.C.C. re-urge the imposition of sanctions. Madary noted that only non-monetary sanctions can be imposed because both parties filed for bankruptcy. However, Madary *978 and I.C.C. failed to answer the appeal, thus precluding that claim. La.C.C.P. art. 2133.
The summary judgment is affirmed. Costs to be paid by appellant.
AFFIRMED.
NOTES
[1] The 8(a) program was designed for small businesses that are socially and economically disadvantaged. The S.B.A. aids those companies by obtaining federal contracts.
[2] Stewart explained that O.T.E. did receive $243,500 from the 8(a) program, but it was not to be repaid. The money was to purchase equipment to complete a contract which had been awarded. She also explained that the S.B.A. did not promise O.T.E. a $1.8 million "deal", but that Bolanos had requested that a project worth $1.8 million be put under the program. Stewart said that O.T.E. has never been denied certification under 8(a) as Madary stated.