MOORE, J.
liDr. Ryan Haygood, DDS, and his dental LLC appeal a partial summary judgment that dismissed his claims under the Louisiana Unfair Trade Practices Act (“LUTPA”) against Dr. Ross Dies, DDS, and his dental LLC. We reverse and remand.

Factual Background

A native of Bossier City, Dr. Haygood finished LSU Dental School in 2000 and opened an office in Bossier City in late 2005. He launched an aggressive advertising campaign to build his practice. He felt that his sudden success irked other local dentists, including Dr. Dies, whom he viewed as his direct, primary competitor.
In 2007, the Louisiana State Board of Dentistry (“the Board”) opened an investigation into Dr. Haygood’s treatment of patients and dental plans. Dr. Haygood felt that Dr. Dies had prompted the complaints, as he had siphoned some of Dr. *1010 Dies’s patients and Dr. Dies had always shown him personal animosity. According to Dr. Haygood, Dr. Dies communicated (in effect, conspired) with certain members of the Board, and with other local dentists, to trump up complaints in an effort to revoke his license. In Dr. Haygood’s view, the Board’s actions were “zealous” and exceeded its authority, including hiring unlicensed investigators to work as dental hygienists at his office, offering them immunity for testifying against him, and retaining Dr. Dies as an expert to evaluate patients’ complaints.- According to Dr. Haygood, Dr. Dies wrote reports that were “studded with errors” and manipulated the Board into convicting him of eight charges (some of which had previously been dismissed for lack of evidence), |2imposing maximum fines and costs (totaling over $173,000), and forcing him to relocate out of state. Dr. Haygood’ also learned that while he was in the midst of the Board proceedings, Dr. Dies made inquiries into buying Dr. Haygood’s practice.

Procedural History

Dr. Haygood filed this suit on September 26, 2011, against Dr. Dies and his LLC; Camp Morrison and C. Barry Ogden, two members of the Board; and Karen Moorhead and Dana Glorioso, the “investigators” who came to his office, posing as patients, with false symptoms. He alleged that they all conspired to deprive him of his dental license by means of defamation, malicious prosecution, and unfair trade practices (the LUTPA claim).
The ensuing litigation has been complex. The defendants other than Dr. Dies filed exceptions of lis pendens and prematurity on grounds that Dr. Haygood was still appealing the Board’s action. The district court sustained some exceptions of prematurity in September 2012. Days later, the Fourth Circuit Court of Appeal overturned the Board’s decision to revoke Dr. Hay-good’s license, citing gross due process violations committed by the Board. Haygood v. Louisiana State Bd. of Dentistry, 2011-1327 (La.App. 4 Cir. 9/26/12), 101 So.3d 90, writ denied, 2012-2333 (La.12/14/12), 104 So.3d 445.[1] In addition, the Board and several of its members, though not named as defendants, strenuously objected to Dr. Haygood’s discovery |3requests on grounds that Board proceedings are confidential and members are immune for their official actions under La. R.S. 37:791. In March 2012, the parties entered a stipulated protective order designating certain records as “confidential” or “highly confidential,” but this does not appear to resolve the objections under R.S. 37:791.
In October 2012, Dr. Dies filed an exception of prescription as to Dr. Haygood’s LUTPA claims on grounds that under La. R.S. 51:1409 A, such claims prescribed one year after the Board filed a complaint against Dr. Haygood.[2] He showed that the Board’s final complaint was issued March 10, 2010, 18½ months before suit was filed on September 26, 2011. In the alternative, Dr. Dies argued that prescription began to run August 7, 2010, when he *1011 gave his deposition in the Board proceedings, 13½ months before Dr. Haygood filed suit.
After a hearing on October 17, 2012, the court deferred ruling on the exception of prescription, citing a lack of evidence. Instead, the court gave Dr. Haygood until January 25, 2013, to complete additional discovery and amend his petition to allege conduct involving Dr. Dies “which may include when said act, transaction, or occurrence took place and/or whether or not it is ongoing.” In accordance with this deadline, Dr. Haygood filed a second supplemental and amending petition on January 25. The court also gave Dr. Dies until February 22 to file any responsive pleading, and set the hearing on the exception for March 14, 2013.
|4Pr. Dies filed the instant motion for partial summary judgment on February 27, 2013, alleging that Dr. Haygood had still not alleged any facts to support a LUTPA case. In support, he offered his own deposition, in which he denied knowing that the Board would use his opinion against Dr. Haygood; insisted he never “referred to” himself as a competitor of Dr. Haygood’s; and denied that he ever attempted to buy Dr. Haygood’s practice. He admitted that he hired an undercover employee (a lady named Wendy Green, not named as a defendant) and asserted that Dr. Haygood could not prove the contents of his numerous phone calls to members of the Board. He also contended that Board proceedings cannot be construed as commerce, and thus LUTPA does not apply.
The district court set the hearing on the motion for partial summary judgment for the same date as the hearing on the exception of prescription, March 14.
Dr. Haygood objected to the setting: although he received an email copy of the motion for partial summary judgment late on the afternoon of February 27, he had still not received “proper service” under La. C.C.P. art. 1313 C, thus depriving him of his full 15 days’ notice under URDC 9.9(a). He also contended the motion was premature, as the court’s October 17 order had limited his discovery to issues of prescription, and thus he had not yet developed all the summary judgment evidence needed to support the LUTPA claim. On the merits, he argued that genuine issues remained, citing: (1) Camp Morrison’s deposition stating that Dr. Haygood was an “antagonistic competitor” of Dr. Dies, (2) Dr. Dies’s deposition admitting |fihe knew that Camp Morrison would use his opinions against Dr. Haygood, but denying that he knew the Board would do so; (3) emails from AFTCO, a broker, to Dr. Dies, regarding the potential purchase of Dr. Haygood’s practice, (4) cell phone records showing Dr. Dies placed calls to Board members as late as July and August 2010, within one year of filing suit; and (5) Wendy Green’s deposition stating that Dr. Dies offered her immunity “on behalf of the Board,” and bragged to her that he was “in charge” of the investigation and “couldn’t be touched.” Dr. Haygood also argued that LUTPA does not specify particular violations, but is broadly construed to prohibit “unethical, oppressive, unscrupulous or substantially injurious” conduct. Levine v. First Nat’l Bank of Commerce, 2006-0394 (La.12/15/06), 948 So.2d 1051. He contended that Dr. Dies’s acts, such as submitting inaccurate and exaggerated reports of examinations of Dr. Haygood’s former patients, qualified as prohibited conduct under LUTPA.
Prior to the hearing, Dr. Dies conceded that the Fourth Circuit had reversed the Board’s decision to revoke Dr. Haygood’s license, but argued that the alleged facts did not prove a conspiracy.

Action of the District Court

After the hearing on March 14, the court denied Dr. Dies’s exception of prescription *1012 but granted his motion for partial summary judgment, stating: “On the issue of whether or not there is sufficiency of evidence for purposes of argument of the motion for this being an unfair trade practice, the court will grant the motion for partial summary judgment.” The court later certified this as immediately appeal-able.
| (¡Dr. Haygood has appealed, designating five assignments of error but arguing three issues:
1. Whether the court erred as a matter of law in granting Dr. Dies’s motion for partial summary judgment;
2. Whether the court erred as a matter of law by hearing the motion for partial summary judgment without proper service and delays for response; and
3. Whether the court erred as a matter of law in hearing the motion for partial summary judgment after severely limiting plaintiffs’ ability to conduct discovery.

Applicable Law

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 2010-0343 (La.1/19/11), 57 So.3d 1002; Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B(2). In ruling on a motion for summary judgment, the court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in favor of the nonmoving party. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764. Summary judgment is seldom appropriate for determinations based on subjective facts such as motive, intent, good faith, knowledge and malice. Hogg v. Chevron USA Inc., 2009-2632 (La.7/6/10), 45 So.3d 991; Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002. Appellate courts review summary judgments de novo, using the same criteria governing the district court’s consideration of whether the summary judgment was appropriate. Moreno v. Entergy Corp., 2012-0097 (La. 12/4/12), 105 So.3d 40; Schultz v. Guoth, supra. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the ease. Richard v. Hall, 2003-1488 (La.4/23/04), 874 So.2d 131.
LUTPA declares it unlawful to engage in “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” La. R.S. 51:1405 A. It also creates a right of action for any person who suffers any ascertainable loss for a violation of the statute. La. R.S. 51:1409 A; Cheramie Servs. Inc. v. Shell Deepwater Production Inc., 2009-1633 (La.4/23/10), 35 So.3d 1053. Claims under LUTPA are not limited to consumers and business competitors, but are available to any person who suffers any ascertainable loss as a result of violations of the statute. Hardy v. Easterling, 47,950 (La.App. 2 Cir. 4/10/13), 113 So.3d 1178. Acts constituting unfair or deceptive trade practices are not specifically defined but are determined on a ease-by-case basis. Johnson Const. Co. v. Shaffer, 46,-999 (La.App. 2 Cir. 2/29/12), 87 So.3d 203; Tyler v. Rapid Cash LLC, 40,656 (La.App. 2 Cir. 5/17/06), 930 So.2d 1135. The supreme court recently explained:
*1013 LUTPA does not prohibit sound business practices, the exercise of permissible business judgment or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. * * * Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of |8daylight between a breach of contract claim and the egregious behavior the statute proscribes.
Cheramie Servs. v. Shell Deepwater, supra at 11, 35 So.3d 1053, quoting Turner v. Purina Mills Inc., 989 F.2d 1419, 1422 (5 Cir.1993); Hardy v. Easterling, supra.
Louisiana law does not have an independent cause of action for civil conspiracy. Hardy v. Easterling, supra; Able Secur. & Patrol LLC v. State, 569 F.Supp.2d 617 (E.D.La.2008). Under La. C.C. art. 2324, “He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.” The actionable element of Art. 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or part, causing the plaintiffs injury. Hardy v. Easterling, supra. A conspiracy may be proved by circumstantial evidence. Id.; Hall v. Lilly, 29,624 (La.App. 2 Cir. 6/18/97), 697 So.2d 676.

Discussion

On de novo review, this court finds a plethora of disputed facts, all of which are genuine issues of material fact precluding summary judgment. First there is Dr. Dies’s status as a business competitor of Dr. Haygood’s. Dr. Hay-good alleged that Dr. Dies was his direct, primary competitor. Dr. Dies never referred to himself as such, but admitted it was “not unusual at all” for him to see patients who had previously seen Dr. Hay-good; Board member Camp Morrison agreed that Dr. Haygood “was in fact” a competitor, perhaps even an “antagonistic competitor” of Dr. Dies; and matters of record show that Dr. Haygood’s office was roughly one mile |nfrom Dr. Dies’s. As noted, LUTPA claims are not limited to business competitors, Hardy v. Easterling, supra, but the backdrop of competition, if proved, would provide a motivation for one competitor to use the Board to eliminate another competitor.
Next there is whether Dr. Dies submitted inaccurate or exaggerated reports in his service in the Board’s investigation of Dr. Haygood. Dr. Dies’s deposition discloses that one patient gave him and Dr. Haygood radically different histories; that Dr. Dies ultimately agreed with Dr. Hay-good’s aggressive treatment of another patient; and while Dr. Dies disagreed with the treatment plan given to a third patient, Dr. Haygood never actually gave that patient such a plan. These acts may have been mere oversights on Dr. Dies’s part; however, if proved, they would strongly suggest a motive to “trump up” charges against Dr. Haygood with the purpose of getting the Board to revoke his license.
In this connection, we reiterate that the Fourth Circuit has already nullified the Board’s decision to revoke Dr. Haygood’s license, on grounds that the Board’s attorney overstepped his bounds in the investigation. Haygood v. Louisiana State Bd. of Dentistry, supra. The potential of a corrupted investigation militates in favor of the nonmoving party and against granting this summary judgment. Hines v. Garrett, supra. It also raises a strong inference that other members of the board engaged in the conduct attributed to Dr. Dies.
Third is the issue of Dr. Dies’s relationship with Wendy Green, a hygienist for *1014 merly employed by Dr. Haygood but later hired by Dr. Dies. [ inWhiIe Dr. Dies stated that he hired her for “legitimate business purposes,” Ms. Green’s affidavit states that even before he hired her, Dr. Dies discussed the ongoing investigation of Dr. Haygood, offered her immunity for her testimony against Dr. Haygood, claimed that he was “in charge” of the investigation and “couldn’t be touched,” bragged about “our friends at the Board,” and admitted his “hatred” of Dr. Haygood. These facts, if proved, would strongly suggest that Dr. Dies’s conduct was motivated less by altruistic concern for the public than animus to suppress a competitor. They would also prove that other Board members agreed with Dr. Dies to engage in conduct to accomplish these objectives.
Finally we note the issue of whether Dr. Dies was attempting to purchase Dr. Hay-good’s dental practice. Dr. Dies denied this, but his emails disclosed in discovery showed correspondence from AFTCO, a broker, with the subject line, “AFTCO Information you are expecting.” Dr. Hay-good also showed that an AFTCO agent, Roger Lee, wrote to him that certain local dentists, including Dr. Dies, were seeking information about his practice. If proved, this would tend to show that Dr. Dies had the motive or intent to remove Dr. Hay-good as a competitor.
All these contested issues address Dr. Dies’s intent to use (or misuse) Board proceedings to remove an aggressive competitor, Dr. Haygood. Intent is simply inappropriate for resolution by summary judgment. Hogg v. Chevron USA, supra; Jones v. Estate of Santiago, supra. On this record, the unresolved issues preclude the grant of summary judgment. The district court was legally wrong to grant the motion.
| nDr. Dies argues that regardless of these issues, LUTPA is limited to trade or commerce, and judicial hearings are not acts of trade or commerce. In support he cites Bolanos v. Madary, 609 So.2d 972 (La.App. 4 Cir.), writ denied, 615 So.2d 339 (1993), and In re Rogers, 391 B.R. 317 (Bankr.M.D.La.2008). In Bolanos, a competitor reported to the Small Business Administration (“SBA”) that the plaintiff violated Small Disadvantaged Business Rules and made “windfall profits,” allegations which might have disqualified the plaintiff from the SBA program. Even though the reports “contained inaccuracies and misstatements,” the court ultimately held that merely sending correspondence to governmental agencies did not fall to the level of an unfair trade practice under R.S. 51:1409. Rogers held that filing a proof of claim that is ultimately shown to be prescribed, in a bankruptcy case, does not qualify as trade or commerce as defined by R.S. 51:1402(9). Neither case appears to address allegations that a direct, primary competitor may have initiated a Board investigation, served as an expert, and rendered spurious opinions that resulted in revocation of the competitor’s license. The allegations of misuse and manipulation of the Board’s proceedings, if proved, may well support a LUTPA claim.
Dr. Dies also argues that even if Dr. Haygood adduced evidence of an unfair trade practice and conspiracy, summary judgment was proper because none of the alleged acts occurred within the one-year prescriptive period of La. R.S. 51:1409 E. Dr. Haygood filed this suit on September 26, 2011; Dr. Dies urges that his last involvement in the investigation was August 7, 2010, when he gave a deposition, 13½ months before suit. However, according to Dr. Haygood’s theory, Dr. Dies’s unfair trade practices and 112conspiracy culminated in the Board’s decision of November 8, 2010, clearly within one year of suit. There is a genuine issue of material *1015 fact whether Dr. Dies’s conduct significantly informed the Board’s ultimate action, or if he perhaps withdrew from the conspiracy. Moreover, the district court denied Dr. Dies’s exception of prescription. On this disputed record, we have no basis to reverse that decision. This argument lacks merit.
Because of our resolution of the principal issue, it is unnecessary for us to address Dr. Haygood’s other arguments. For the guidance of the district court on remand, however, we would seriously question the practice of rendering summary judgment on the merits after the court has previously restricted discovery to the issue of prescription. The opponent is entitled to “adequate discovery” under La. C.C.P. art. 966 C(l). Although the case has not been on the “fast track,” the district court’s order of October 17, 2012, specifically limited Dr. Haygood’s discovery. On this record, the ruling on the merits was premature.[3]

Conclusion

For the reasons expressed, the summary judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion. All costs are to be paid by the appellees, Ross Dies and his professional limited liability company.
REVERSED AND REMANDED.

. The Fourth Circuit's opinion focused on the Board’s attorney, Brian Begue of New Orleans, who improperly acted as both prosecutor and adjudicator in the investigation. However, the account of Begue’s corrupt interactions with Board members, and his use of unlicensed investigators, closely parallels Dr. Haygood's allegations of the actions of Dr. Dies and the other defendants herein.

. Dr. Dies’s exception of prescription is apparently inconsistent with the other defendants’ contention that Dr. Haygood's suit was premature until all Board proceedings, including all appeals, were concluded.

. A nonparty to this suit, Dr. H.O. Blackwood, and three defendants, Camp Morrison, Karen Moorhead and Dana Glorioso, have filed a motion in this court to dismiss Dr. Haygood’s appeal of a separate ruling that denied Dr. Haygood’s motion to compel discovery against Dr. Blackwood, on grounds that it is an unappealable interlocutory judgment. That ruling, however, appears final in that it would terminate the lawsuit as far as Dr. Blackwood is concerned. Larriviere v. Howard, 2000-186 (La.App. 3 Cir. 10/11/00), 771 So.2d 747, writ granted in part on other grounds, 2000-3087 (La.1/26/01), 781 So.2d 567. The motion to dismiss is denied.