689 So.2d 650 (1997)
JOE CONTE TOYOTA, INC., et al.
v.
TOYOTA MOTOR SALES, U.S.A., INC., et al.
No. 95-CA-1630.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1997.
Writ Denied April 25, 1997.
Joseph C. Bartels, William A. Pigg, Law Office of Joseph C. Bartels, New Orleans, for Plaintiffs-Appellants, Joseph P. Conte, Jr. and Joseph P. Conte Family Trust.
*651 Anthony Rollo, Stephen W. Rider, Lauren L. Zimmermann, McGlinchey Stafford Lang, L.L.C., New Orleans, for Defendants-Appellees, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Credit Corp. and J.B. McCullough.
Jerry L. Saporito, Michael D. Sledge, O'Neil, Eichin, Miller, Breckinridge & Saporito, New Orleans, for Defendants-Appellees, Gulf States Toyota, Inc., John Bishop, Jerry H. Pyle and Robert Skillern.
Before SCHOTT, C.J., and CIACCIO and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
This action arises from a suit for breach of contract, interference with contract, conspiracy, breach of the Louisiana Motor Vehicle Act, violations of the Louisiana Unfair Trade Practices Act and Louisiana antitrust laws. Joseph P. Conte, Jr. (individually referred to as "Conte"), the Joseph P. Conte Family Trust ("the Family Trust") and Joe Conte Toyota, Inc. ("Conte Toyota")[1] (collectively "Plaintiffs") filed their original Petition on December 22, 1993, seeking injunctive relief and monetary damages against Toyota Motor Sales, U.S.A., Inc. ("TMS"), Gulf States Toyota, Inc.("GST"), Toyota Motor Credit Corporation ("TMCC"), John Bishop (Vice President of Sales and Marketing for GST), Jerry H. Pyle (President of GST), Robert Skillern (District Manager for GST), and J.B. McCullough (Branch Manager of TMCC) (collectively referred to as the "Toyota Defendants").
Plaintiffs' Petition alleges that GST, in a conspiracy with TMS and TMCC, unlawfully attempted to put Conte Toyota out of business by:
(1) refusing to fund Conte Toyota's loan to finance construction of a new facility,
(2) failing and/or refusing to deliver an adequate number of properly equipped automobiles,
(3) charging Conte Toyota excessive freight costs,
(4) attempting to terminate Conte Toyota's franchise agreement without cause,
(5) discriminating against Conte Toyota by delivering to Conte Toyota model types and colors that were unpopular,
(6) disseminating disparaging remarks to Conte Toyota employees "calculated to deprive Conte Toyota of its employees' services,"
(7) delaying shipments of vehicles to Conte Toyota,
(8) manipulating the allocation system to Conte Toyota's detriment,
(9) failing to provide consistent product availability, thereby adversely affecting Conte Toyota's planning ability,
(10) failing to provide an adequate supply of vehicles to assure the financial viability of Conte Toyota and a return on investments consistent with other comparable dealers;
(11) wrongfully suspending automobile shipments to Conte Toyota, and
(12) causing Conte Toyota the lost sales of 8,173 automobiles due to the above misconduct.
Plaintiffs initially requested a preliminary injunction restraining GST and TMS from terminating GST's dealer agreement with Conte Toyota, which the court granted. Additionally, Plaintiffs sought an order compelling TMCC to loan money to Conte Toyota under a floor plan line of credit that was suspended in October 1992.
On December 14, 1994, and January 12, 1995, Defendants filed Peremptory Exceptions of No Right of Action against Plaintiffs Conte and the Family Trust, pursuant to LSA-C.C.P. art. 927(A)(5), alleging that: (1) the totality of Conte's claims were brought on behalf of Conte Toyota, thereby precluding an action in Conte's individual capacity, and (2) the Family Trust lacked procedural capacity to bring said claims on its own behalf.
*652 On January 27, 1995, the trial court heard and pretermitted the Exceptions of No Right of Action, granting Conte and the Family Trust an additional twenty five days to amend the pleadings or to submit reasons why the Exceptions should not be maintained. The trial court also scheduled a February 24, 1995, status conference.
On February 21, 1995, Conte and the Family Trust attempted to file a Supplemental and Amending Petition (the "Amended Petition"). The proposed Amended Petition included an Order requesting leave to file the Amended Petition. The following day, the trial court appears to have denied Conte and the Family Trust's Motion for Leave to File an Amended Petition; the Order attached to the Amended Petition is stamped February 22, 1995, and is signed by the trial judge. However, to the left of the Order is the handwritten word "denied." To the right of the Order is handwritten "Denied 2/24/95" followed by an illegible notation.
At the February 24, 1995, status conference, the trial court reversed its January 27, 1995, Order to file supplemental/amending pleadings and denied Conte and the Family Trust leave to file the Amended Petition. The trial court signed a final judgment sustaining the Exceptions of No Right of Action against Conte and the Family Trust on May 16, 1995, from which Conte and the Family Trust appeal.

STATEMENT OF FACTS
Conte Toyota is a Louisiana corporation that formerly operated a Toyota automobile dealership. Conte is a shareholder and officer of Conte Toyota and a guarantor of Conte Toyota's corporate debts. The Family Trust purports to be a shareholder of Conte Toyota.
TMS is the exclusive importer and national distributor for the continental United States of Toyota brand motor vehicles, parts and accessories. In Louisiana and four other states, TMS sells Toyota brand products to GST, its independent distributor. Thereafter, GST distributes the Toyota brand products to approximately 132 motor vehicle dealers in its area, formerly including Conte Toyota. Although TMS and GST operate in a working relationship, TMS owns no interest in GST, and GST owns no interest in TMS.
TMCC, a subsidiary of TMS, provides wholesale floor plan inventory financing services to car dealers and retail financing services to car buyers. TMCC is a separately incorporated, legally distinct entity from TMS that transacts business on its own behalf and maintains its own corporate identity and by-laws. Like TMS, TMCC owns no interest in GST.
Conte Toyota's business relationship with GST began in 1972, when GST entered into a Toyota Sales and Service Agreement ("Dealer Agreement") with Conte Toyota to operate a Toyota dealership in New Orleans, Louisiana. The Dealer Agreement, which was modified in September, 1984, granted GST the right under certain conditions to cancel or terminate the agreement with Conte Toyota. Additionally, although TMS had no direct control over GST's relationship with Conte Toyota, TMS' distribution agreement with GST granted TMS the right to approve prospective GST dealers. Thus, indirectly, TMS had some control over which dealerships GST sold Toyota products. However, once TMS approved a new GST dealer, the right to terminate the dealer belonged solely to GST.
Conte Toyota's business relationship with TMCC commenced in 1987, when TMCC began making retail car loans to Conte Toyota's customers. The following year, TMCC also began financing Conte Toyota's wholesale inventory purchases of automobiles pursuant to an Inventory Loan and Security Agreement. This type of arrangement is referred to in the automobile finance industry as "floor plan" financing. In March, 1990, Conte Toyota signed a Inventory Loan Agreement (the "Loan Agreement"), an agreement that could be terminated at any time upon written notice with or without cause. The sole parties to the Loan Agreement are Conte Toyota and TMCC.
Under the Loan Agreement, TMCC provided Conte Toyota with borrowing privileges under a line of credit for Conte Toyota's use in buying its car inventory from distributor GST. Under the terms and conditions *653 of the Loan Agreement, Conte Toyota granted TMCC a security interest in its car inventory, in the proceeds from Conte Toyota's sale of those cars, and in various other assets, to secure the dealership's debt and other obligations to TMCC. Conte Toyota's principals, Joseph P. Conte, Sr. ("Conte Sr.") and Conte, his son, personally guaranteed Conte Toyota's debt and other obligations to TMCC.
Beginning in the late 1980's, Conte Toyota began experiencing financial difficulties. In June, 1990, in an effort to turn around the business, Plaintiffs purchased 6.75 acres of property in New Orleans East, for the purpose of constructing a new and larger facility. During that same period, Conte Toyota continued to incur substantial losses; over $1.2 million between 1989-1992.
On October 21, 1992, five Conte Toyota proceeds checks totalling $79,548.22 made payable to TMCC were returned for non-sufficient funds. As a result, TMCC conducted a floor plan audit of Conte Toyota on October 22, 1992, at which time TMCC discovered that Conte Toyota had sold nine cars out of trust and had misappropriated $96,740.03 in collateral proceeds from those car sales. Because of the foregoing, TMCC suspended Conte Toyota's wholesale floor plan borrowing privileges on October 28, 1992. Following the loss of its wholesale financing, Conte Toyota's sales of new Toyota vehicles further declined.
As a result of Conte Toyota's loss of its wholesale floor financing, GST terminated Conte Toyota's Dealer Agreement. Without financing, GST could not draft on any pre-approved credit source in payment for Toyota vehicles purchased by Conte Toyota. By letter dated July 1, 1993, GST gave Conte Toyota notice of termination of the Dealer Agreement. Such notice advised Conte Toyota that the Dealer Agreement would be terminated after 90 days because of (among other reasons) Conte Toyota's failure to maintain wholesale floor financing.
Conte responded to GST's termination notice on September 22, 1993, advising that the notice inaccurately references section numbers of the Dealer Agreement. On September 23, 1993, GST sent another notice of termination to Conte Toyota advising of the same deficiencies previously noticed, and that the Dealer Agreement would terminate 90 days from the date of such notice.
On December 13, 1993, Conte Toyota's legal counsel advised GST of Conte Toyota's objections to the notice of termination and requested that the same be retracted. Thereafter, on December 16, 1993, counsel for Conte Toyota filed a letter complaint with the Louisiana Motor Vehicle Commission (Commission) asserting alleged protest of unfair termination and other wrongful actions. On December 22, 1993, Plaintiffs instituted this lawsuit.

ASSIGNMENTS OF ERROR
1. Whether the trial court correctly maintained Toyota Defendants' Exception of No Right of Action, finding that Conte and the Family Trust lack separate and individual rights of action against Toyota Defendants.
2. Whether the trial court correctly maintained Toyota Defendants' Exception of No Right of Action against the Family Trust on procedural capacity grounds.

The Trial Court's Finding that Conte and the Family Trust Had No Right of Action
A peremptory exception of no right of action is the correct method of challenging whether Conte and the Family Trust have standing to bring forth this action. Ware & Wingate Co. v. Wingate, 495 So.2d 1334, 1336 (La.App. 3d Cir.1986). Following a thorough review of the record and pleadings, we agree with the trial court's judgment granting Toyota Defendants' exception of no right of action.
All claims asserted by Conte and the Family Trust seek damages allegedly incurred by Conte Toyota. As shareholders of Conte Toyota, Conte and the Family Trust have no right of action independent of Conte Toyota. Conte Toyota, a named Plaintiff in this action, is the proper party to pursue this lawsuit. Conte, as guarantor of Conte Toyota's corporate debts, has not incurred damages separate and independent of the damages allegedly suffered by Conte Toyota. Moreover, even if Conte and the Family Trust had standing to assert these claims in *654 their individual capacities, the Family Trust nevertheless lacks procedural capacity to pursue this lawsuit.
Shareholders and officers of a corporation, such as Conte and the Family Trust, do not have a personal right to sue in Louisiana to recover for acts committed against, or causing damage to the corporation. Bolanos v. Madary, 609 So.2d 972, 977 (La.App. 4th Cir.1992), writ denied, 615 So.2d 339 (La.1993). A guarantor of corporate obligations, such as Conte, has no standing to sue for injury to the corporation. See, Lakeside National Bank v. Vinson Bros., 607 So.2d 1009, 1011 (La.App. 3d Cir.1992); Eximco, Inc. v. Trane Co., 737 F.2d 505, 511 (5th Cir.1984). Likewise, such a guarantor has no standing to sue individually for personal losses incurred as guarantor, even in the presence of breach of contract, fraud, conspiracy, or other wrongful misconduct. Nowling v. Aero Services International, Inc., 752 F.Supp. 1304, 1316 (E.D.La.1990); Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981).
In Eximco v. Trane Co., supra, 737 F.2d at 511, the federal court, applying Louisiana law, addressed a factual situation analogous to the case at bar. There, individual plaintiffs were the shareholders of a closely held corporation that was to obtain financing from the defendant. In reliance on the defendant's statements, the individual plaintiffs allegedly resigned their jobs, personally rented office and warehouse space for the new business and personally guaranteed the corporation's debts. Dismissing plaintiffs' claims on summary judgment for no right of action, the court held that corporate shareholders who purchase real estate for the corporation's benefit, have no right of action separate from the corporation against third-parties.
Conte and the Family Trust are sole stockholders of Conte Toyota. Additionally, Conte acted as an officer of the corporation and guarantor of Conte Toyota's debts. Accordingly, Conte and the Family Trust's damages are purely derivative of Conte Toyota's claims.
Conte's allegation in his appellate brief that he has a personal and independent right of action arising from his purchase of property in New Orleans East is likewise unavailing. There is no evidence in the record that Conte, individually rather than as a representative of Conte Toyota, purchased the New Orleans East property in his own name, or with his own money.[2] In fact, the allegations of the petition are directly to the contrary. Plaintiffs' Petition specifically alleges that Toyota Defendants "refused to fund Conte Toyota's loan to finance construction of the new facility" and that "Conte Toyota had spent the $736,000 for the land...." The Petition further asserts that Conte Toyota was negotiating with Toyota Defendants for a floor plan and a loan to construct the dealership in New Orleans East. The petition does not allege that Conte personally purchased the New Orleans East property.
Assuming, arguendo, that Conte were allowed to file a supplemental petition alleging that he purchased the property in his own name, it is clear from the record that the purchase was part of the overall plan to build a new dealership for Joe Conte Toyota, Inc. The damages suffered, if any, result from the failure of financing for the construction of the dealership and would flow from the damage claim of the corporation. Accordingly, the amendment would be meaningless.

The Trial Court's Judgment Dismissing the Family Trust on Procedural Grounds.
Neither Conte nor the Family Trust has a right to assert any of the claims in the Petition because the right of action belongs soley to Conte Toyota. Accordingly, the Family Trust's failure to assert those claims through its Trustees offers additional support to the trial court's judgment granting the exception of no right of action against the Family Trust.
The Family Trust lacks procedural capacity to assert any claims on its own behalf because it was never properly joined *655 in this action. Article 699 of the Louisiana Code of Civil Procedure provides that the Trustee of an express trust is the proper plaintiff to sue to enforce a right of the trust estate. Louisiana courts regularly enforce this rule, and grant Exceptions of No Right of Action dismissing claims brought on behalf of trusts by parties other than the trustees. See, Huber v. Calcasieu Marine National Bank of Lake Charles, 262 So.2d 404, 407 (La.App. 3d Cir.1972); Succession of Hines, 341 So.2d 42, 45 (La.App. 3d Cir.1976).
There are no pleadings of record adding the Family Trust's trustees as petitioners on behalf of the trust. The fact that Conte brought suit in his individual capacity and that by happenstance he is also a co-trustee of the Family Trust is of no moment. The law requires that suit be brought in the proper capacity.
Conte's claim in brief that he is now asserting the claims of the Family Trust as a co-Trustee does not empower him to bring an action on behalf of the Family Trust. Pursuant to the terms of the trust instrument, Conte is prohibited from taking unilateral action of the type undertaken here without the unanimous consent of the remaining co-trustees. As shown by the Affidavits of Susan and Doris Conte, the Family Trust's remaining co-Trustees, Conte does not have this authority. Susan and Doris Conte expressly denied Conte's authority to act in this matter and specifically objected to his pursuing this appeal on behalf the Family Trust. Accordingly, Conte lacks authority to pursue this litigation on behalf of the Family Trust.
The trial court did not err in dismissing the claims against the Family Trust absent an order to amend to cure the procedural capacity defect. Although the trial court's judgment of May 16, 1995, contains no order to cure the procedural capacity defect, this does not constitute manifest error. On January 27, 1995, the trial court granted the Family Trust 25 days to file a supplemental and amended petition to name the Family Trust's Trustees as parties to the action. On February 21, 1995, Plaintiffs attempted to file a supplemental and amended petition that did not purport to add Joseph Conte, Jr., Susan Conte and Doris Conte (the Family Trust's three co-Trustees) as parties to the action. If a plaintiff fails to comply with an order to amendin this case the trial court's order of January 27, 1995then the action shall be dismissed. La.C.C.P. art. 934.
The trial court did not commit error in failing to include an order to amend the pleadings to remove the grounds of the objection because the Family Trust could not otherwise cure the underlying no right of action objection. Therefore, including an order to amend the pleading would constitute a vain and useless act.

CONCLUSION AND DECREE
For the foregoing reasons, we find the trial court's judgment of May 16, 1995, granting Toyota Defendants' Peremptory Exceptions of No Right of Action to be supported by the record on appeal. The judgment of the trial court is therefore affirmed.
AFFIRMED.
NOTES
[1] Conte Toyota is a family-owned auto dealership of which Conte and the Family Trust are shareholders. Conte is also the President, Dealer-Operator, Chairman of the Board and General Manager of the dealership.
[2] The documents annexed to plaintiff's brief are not part of the trial record and cannot be considered in this appeal.