11 LOVE, Judge.
Plaintiff in cross-claim, Frank T. Stewart, Jr. (hereinafter “Stewart”), appeals the judgment of the trial court, which sustained the defendant’s Exceptions of No Right of Action and No Cause of Action. Stewart contends that the misdeeds of the defendants, Bob Dean (hereinafter “Dean”) and Hibernia National Bank, caused a devaluation of his individual interest in a corporation, and he has taken this action to recover his individual losses. For the reasons outlined below, we affirm the ruling of the trial court and remand.
FACTS AND PROCEDURAL HISTORY
This case involves the consolidation of eight nursing homes into a single enterprise to be listed on a public stock exchange. Debra Dean Cook (hereinafter “Cook”), plaintiff in the main demand, and her brother, Dean, defendant in the main demand, were both partial owners of each of the eight nursing homes by virtue of being shareholders or partners. Stewart, defendant in the main demand and plaintiff in cross-claim, was an owner in two of the nursing homes by virtue of being a shareholder or a partner. Specifically, Stewart was a shareholder inJ^Maison Orleans II, Inc., and a general partner in Maison Orleans Partnership in Commendam.
The owners sought the services of Hibernia National Bank (hereinafter “Hibernia”) to perform the consolidation of the nursing home debts and cross-collaterali-zation among the eight homes. On October 8, 1997, the nursing homes entered into a loan agreement, in which Hibernia extended the enterprise a $23 million loan. Of that, $14 million went towards the consolidation of the nursing homes’ debt, and $9 million was made available as an additional line of credit. The loan agreement restricted the use of the available funds to purchasing other nursing homes, renovations, and buying out minority shareholders. The loan proceeds were restricted to commercial use. The guarantors of this loan were Dean, Cook, and Billie F. Dean. Stewart was not a guarantor of the loan and he did not sign the loan agreement. Also, Stewart was not a signatory to the September 1998 addendum to the loan agreement, or to the second amendment to the loan agreement of 1999.[1]
Dean, principal manager of the nursing homes, had a relationship with Hibernia, separate from the nursing home enterprise. Hibernia had made unsecured loans to Dean prior to the loan agreement above. Stewart alleged that Hibernia and Dean, notwithstanding the restrictions set forth in the loan agreement, collateralized Dean’s unsecured personal loans with the nursing homes’ assets. These proceeds were allegedly used to finance personal *903 projects of Dean, independent of the nursing home enterprise. Stewart alleged that these personal investments of Dean depleted the nursing homes’ line of credit, wasted the debt ^resources, encumbered assets, and devalued the enterprise, which never went public.
As these events became apparent, Cook filed a shareholder’s derivative suit on behalf of the nursing homes. Cook named Dean and Stewart as nominal defendants in that action. Cook, in her petition, alleged that Dean conspired with Hibernia to misdirect company funds and misappropriate corporate opportunities for personal gain. Cook further alleged that Hibernia was able to raise itself to the status of secured creditor by allowing Dean to secure his personal loans with the nursing homes’ assets.
Stewart filed a cross-claim against his co-defendants, Hibernia and Dean, in which he alleged many of the same facts as Cook in her petition. Stewart further alleged that he lost the opportunity to sell his interests as other minority owners had, and that he suffered personal financial damage by the devaluation of the nursing home enterprise. Stewart also alleged that as a general partner in the partnership in commendam, he undertook the liability of the partnership, which he alleged Dean mismanaged.- Stewart claimed that liability imposed on him by Cook’s petition should be imputed to the culpable actors, Hibernia and Dean. Stewart claimed that he suffered damages personally and that Hibernia and Dean were liable to the extent that any liability might fall upon him as a result of Cook’s suit.
Stewart filed a cross claim for damages he sustained personally due to the alleged misdeeds of Hibernia and Dean; those damages, Stewart asserts, are distinct from the damages sustained by the nursing homes.
In response to Stewart’s claim, Hibernia filed Exceptions of Vagueness, Lack of Conformity with La. C.C.P. art. 891, No Right of Action, and No Cause of 14Action. On November 8, 2000, after a hearing on these exceptions, the trial court sustained the exceptions of No Right of Action and No Cause of Action. The trial court further stated that Hibernia’s other exceptions were rendered moot by its ruling. It is from this judgment that Stewart takes the instant appeal.
DISCUSSION
In his first assignment of error Stewart asserts that the trial court erred in finding that he had no right of action as a shareholder or as a general partner in a partnership in commendam, against those who recklessly or intentionally devalued his interest in the corporation. As stated above, Stewart is not asserting a derivative claim, but a claim for individual losses.
Stewart fails to demonstrate that he has a right of action for his personal damages. The Supreme Court in Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885, 888 defined the Exception of No Right of Action as follows:
An action can only be brought by a person having a real and actual interest which he asserts. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. (Internal citations omitted).
First, Stewart fails to demonstrate that Hibernia owed him a fiduciary duty. No fiduciary duty can exist between a financial institution and another party unless there *904 is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. La. R.S. 6:1124. There is no evidence.that Hibernia agreed to act as a fiduciary to the enterprise, much less to Stewart personally.
|sSecond, Stewart cites La. R.S. 12:91 as the basis for his personal right of action. However, the statute merely outlines the fiduciary duties of officers and directors to their shareholders. La. R.S. 12:91 states in pertinent part:
Officers and director shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinary prudent men would exercise under similar circumstances in like positions.
This statute does not articulate a personal right of action as Stewart suggests. This statute sets out the nature of the fiduciary duty that officers and directors owe to shareholders; Stewart fails to show that this statute applies to actions against officers and directors to recover individual damages.
Further, Stewart cites Talbot v. C. & C. Millworks, Inc., 97-1489 (La.App. 1 Cir. 6/29/98), 715 So.2d 153, to demonstrate that he is entitled to an individual right of action against Hibernia. His reliance on this case is misplaced. The issue in Talbot was whether the trial court erred in sustaining a partial exception of no right of action. In Talbot, a minority shareholder sued both as an individual and- in a derivative capacity. The trial court sustained a partial Exception of No Right of Action as to the individual claim. The First Circuit held that it was procedurally improper for the trial court-to sustain a partial Exception of No Right of Action since both the individual and derivative action arose from a single set of facts. Here Stewart only asserts one right of action, as an individual.
Stewart sued Dean in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard both as an individual and in a derivative capacity for non-payment of dividends. Dean took a writ in that case because the trial court refused to sustain his partial Exception of No Right of Action. In the writ, Frank T. Stewart v. Bob G. Dean, 2001-1357, unpub. (La.App. 4 Cir. 11/06/01), this Court followed the _J¿Talbot ruling, finding that a partial Exception óf No Right of Action is procedurally improper. Stewart suggests that our ruling on the matter above entitles him to sue for his individual losses in the instant case. However, our adherence to the rule in Talbot cannot be interpreted to allow an individual right of action, as he suggests.
Stewart relied on the authorities cited above to support his contention that as a shareholder in Maison Orleans II, Inc., he is entitled to a personal right of action for his damages. However, none of these authorities are on point with this contention.
This Court in Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 95-1630, p. 7 (La.App. 4 Cir. 2/12/97), 689 So.2d 650, 654, stated that shareholders and officers of a corporation do not have a personal right to sue in Louisiana to recover for acts committed against, or causing damage to, the corporation. In Sun Drilling Products Corp. v. Rayborn, 2000-1884, p. 17 (La.App. 4 Cir. 10/3/01), 798 So.2d 1141, 1153, this Court stated “a shareholder may only sue to recover losses to a corporation resulting from mismanagement and breach of fiduciary duties secondarily through a shareholder’s derivative suit.” If the breach of fiduciary duty causes a direct loss to the shareholder or causes damage *905 affecting the shareholder personally, a shareholder may have the right to pursue a claim individually for breach of a fiduciary duty to the corporation under La. R.S. 12:91. Id. at 1154. However, in situations where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect. Where the shareholder, but not the corporation, suffers a loss, that loss is considered a direct loss to the shareholder, and the ^shareholder may have a right to sue the officers and directors of the corporation for breach of fiduciary duty. Id.
The damages asserted by Stewart are damages to the corporation, as the alleged conduct cause a devaluation of the entire enterprise, not just of Stewart’s share. His damage is not separable from that sustained by the corporation itself; therefore the correct action under which to recover damages would be a shareholder’s derivative suit.
Similarly, Stewart does not have a right of action to sue for losses of the Maison Orleans partnership in commen-dam in which he was a general partner. Stewart cites La. C.C. art. 2844 and Quinn-L Corp. v. Elkins, 519 So.2d 1164 (La.App. 1st Cir.1987), as support for his right of action. Specifically, Stewart cites the following language:
However, when a partner in commen-dam participates in the management or administration of the partnership or conducts any business with third parties on behalf of the partnership, he becomes liable as a general partner for the obligations of the partnership.
Quinn-L Corp., 519 So.2d at 1176. This language merely outlines how certain actions of a partner in commendam render him liable as a general partner. It does not support a private right of action. As long as a partnership exists, not dissolved or liquidated, the partnership itself is the proper party to maintain an action for damages. Tessier v. Moffatt, 93 F.Supp.2d 729, 735 (E.D.La.1998).
Finally, the only other basis upon which Stewart could sue for individual damages would be to allege fraud. Ironically, he has not made this assertion. In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other conditions of the | smind of a person may be alleged generally. La. C.C.P. art. 856. Even though misconduct is asserted in Stewart’s pleadings and brief, fraud is hot alleged in accordance with the article above and therefore is not considered.
In his second assignment of error, Stewart asserts that the trial court erred in finding that his cross-claim failed to state a cause" of action for his personal damages for loss of value to his ownership interest in two of the nursing homes.
In Nehrenz v. Dunn, 593 So.2d 915, 917 (La.App. 4th Cir.1992), this Court defined the Exception of No Cause of Action as follows:
A peremptory exception of no cause of action goes to the legal sufficiency of a petition and is not to be used as a replacement for a hearing on the merits; for purposes of the exception all well-pleaded allegations of fact are accepted as true.The Court must determine whether the law grants a remedy to anyone for the particular harm alleged by plaintiff based on the petition without admitting additional evidence to support or controvert the exception.
For the same reasons that Stewart has no right of action, he has no cause of action. The applicable law does not support Stewart’s allegations that Hibernia caused damage to him individually. The actions of Dean, using the loan proceeds for personal gain thereby decreasing the value of the nursing homes’ assets, caused *906 damages to the enterprise, not to Stewart individually. Even assuming that Stewart’s allegations are true; he has not stated a claim for which relief may be granted. See Nehrenz, 593 So.2d at 917. The damages he claims belong to the nursing home enterprise, not to Stewart personally.
Stewart was not a signatory to the loan agreement of October 8, 1997, the September 1998 addendum to the loan agreement, or the second amendment to the loan agreement of 1999. The agreements were between Hibernia, on the one hand, and seven corporate entities and one partnership in commendam, on the other. Stewart’s liability as a general partner in the partnership in commendam for the | ¡¡obligations under the loan agreement is merely contingent, not direct; the partnership entity is directly liable. It therefore follows that Stewart has no direct cause of action against Hibernia. Stewart had no direct obligation to authorize the loan agreement for he was merely a shareholder of one of the corporate entities. Any single general partner of the partnership in commendam could have obligated the whole partnership. If a general partner of the partnership in commendam breached a fiduciary duty to either the partnership or the partners, that general partner must account to the partnership and the other partners.[2] La. C.C. arts. 2809 and 2836. This means that the partnership and/or the partners have a claim against the breaching partner. Ergo, the cause of action is derivative in nature, not direct.
When an exception of no cause of action is sustained, a party may be permitted to supplement and amend his claim if the supplementation or amendment will result in a valid cause of action being stated. Stewart’s claims are totally indirect and/or derivative, but he might be able to state a direct cause of action against Hibernia for fraud. Therefore, we remand the matter to the trial court for the sole purpose of permitting him to allege with particularity fraud, as required by La. C.C. P. art. 856, if he so chooses.
In his third assignment of error, Stewart asserts that the trial court' erred in failing to take the facts as pled in his cross-claim as true for the purposes of the hearing on the exceptions. We find no evidence in the record to support this contention for his pleadings fail to state an individual cause of action.
CONCLUSION
Despite Stewart’s repeated assertions that he is entitled to sue Hibernia for individual losses he suffered due to alleged conduct of Hibernia and Dean, we find |inthat the trial court was correct in sustaining Hibernia’s Exceptions of No Right of Action and No Cause of Action. We affirm the judgment of the trial court, but remand to allow Stewart to amend his claim to allege fraud if he so chooses.
AFFIRMED AND REMANDED.

. No signed copy of the second amendment is in the record on appeal.

. This supports this court’s ruling in Frank T. Stewart v. Bob G. Dean, unpub. (La.App. 4 ee. 11/6/01).