| KURT CROSBY; THE TARA E. | * | NO. 2021-CA-0054 |
| CROSBY TRUST; THE | | |
| ALLISON CROSBY TRUST; | * | |
| THE TARA E. CROSBY TRUST | | COURT OF APPEAL |
| 2; THE ALLISON CROSBY | * | |
| TRUST 2; THE LAUREN | | FOURTH CIRCUIT |
| GUIDRY TRUST, THE AARON | * | |
| GUIDRY TRUST; AND | | STATE OF LOUISIANA |
| BERTUCCI CONTRACTING | * * * * * * * | |
| COMPANY, LLC | | |

VERSUS

WAITS, EMMETT, POPP &
TEICH, L.L.C.; RANDOLPH
WAITS; JOHN EMMETT; AND
JORDAN TEICH

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01609, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge
Dale N. Atkins)

David P. Vicknair
Keegan E. Chopin
SCOTT VICKNAIR, LLC
909 Poydras Street, Suite 2025
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFFS/APPELLANTS

Gustave A. Fritchie, III
Christopher H. Irwin
IRWIN FRITCHIE URQUHART & MOORE, LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130

      COUNSEL FOR DEFENDANTS/APPELLEES

                        **AFFIRMED**
                        **October 6, 2021**

DNA
RML
TGC

This is a legal malpractice case. Appellants, Kurt Crosby, the Tara E. Crosby Trust, the Allison Crosby Trust, the Tara E. Crosby Trust 2, the Allison Crosby Trust 2, the Lauren Guidry Trust, and the Aaron Guidry Trust (collectively "Crosby Appellants"), appeal the trial court's December 10, 2020 judgment, which granted the second exception of no right of action filed by Appellees, Waits, Emmett, Popp & Teich, L.L.C., Randolph Waits, John Emmett, and Jordan Teich (collectively "WEPT Appellees"), and dismissed all of Crosby Appellants' claims. For the reasons that follow, we affirm the trial court's judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

***Underlying Lawsuit - NASDI, LLC v. Bertucci Contracting Company, LLC***

In October 2012, NASDI, LLC, sued Bertucci Contracting Company, LLC, (hereinafter "BCC") for damages arising out of a contract dispute concerning the demolition of the Twin Span Bridges over Lake Pontchartrain and the construction of marine mattresses for coastal protection. The lawsuit of *NASDI, LLC v. Bertucci Contracting Company, LLC* was filed in the Twenty-Fourth Judicial District Court for the Parish of Jefferson with docket number 719-944 (hereinafter "*NASDI*

1

Lawsuit"). BCC answered and filed, on October 31, 2012, a reconventional demand for its own alleged damages. In the *NASDI* Lawsuit, Randolph Waits and Jordan Teich, two WEPT Appellees, represented BCC. No Crosby Appellants were parties to the *NASDI* Lawsuit.

In January 2018, a jury trial commenced in the *NASDI* Lawsuit. The jury rendered a verdict against BCC. In accordance with the jury verdict, the trial court signed a judgment in favor of NASDI and against BCC for damages totaling $4,184,993.00. The trial court subsequently signed another judgment against BCC, which awarded various attorneys' fees and costs to NASDI.

After the adverse judgments, BCC engaged in settlement negotiations with NASDI in an effort to mitigate its losses. However, on February 14, 2019, WEPT Appellees withdrew from representation of BCC in the *NASDI* Lawsuit when Crosby Appellants and BCC filed a legal malpractice suit against WEPT Appellees.

On March 18, 2019, NASDI, LLC; NASDI Holdings, LLC; and Great Lakes Dredge & Dock Corporation on one side, and BCC, Kurt Crosby, as a member and authorized representative of BCC, and Hartford Insurance Company on the other side, entered a Settlement Agreement and Release (hereinafter "*NASDI* Settlement"). In the *NASDI* Settlement, NASDI and BCC agreed to settle the *NASDI* Lawsuit for ▆▆▆▆▆▆ dollars. Additionally, Kurt Crosby signed an agreement, in which he agreed to guarantee the amount owed by BCC in the *NASDI* Lawsuit ("Guarantor Agreement").

***Initial Transaction - The Seventy-Five Percent Interest in BCC***

On January 1, 2015, Crosby Appellants and Vinton Crosby, who is not a party to this suit, purchased Anthony J. Zelenka's and Margaret G. Zelenka's forty

2

percent interest in BCC and a portion of the fifteen percent ownership interests in BCC owned by the Catherine Elizabeth Zelenka ESBT Trust; the Caroline Margaret Zelenka QSST Trust; the Meredith Ann Zelenka Trust; and the Madeline Marie Zelenka ESBT Trust (collectively "Zelenka Trusts"). By these purchases, Crosby Appellants and Vinton Crosby purchased, in total, seventy-five percent of BCC (hereinafter "Seventy-Five Percent Transaction"). After the Seventy-Five Percent Transaction, the Zelenka Trusts retained, in total, twenty-five percent ownership in BCC. As part of the Seventy-Five Percent Transaction, Mr. Zelenka agreed to retain substantially all risks from the then-pending *NASDI* Lawsuit (minus legal and litigation expenses and subject to a $5.159 million cap), as well as to retain all potential rewards in the form of monies recovered from the *NASDI* Lawsuit.

In the course of the negotiations leading up to the Seventy-Five Percent Transaction, John Emmett, a WEPT Appellee, reviewed, prepared, and edited documents on behalf of Crosby Appellants and Vinton Crosby that memorialized the Seventy-Five Percent Transaction. Additionally, Mr. Emmett communicated with Kurt Crosby and Farrel Trosclair. In an affidavit, Mr. Emmett identified Mr. Trosclair as "the chief financial officer for . . . various Crosby interests."[1]

### Termination of Mr. Zelenka's Employment with BCC

On January 2, 2015, the day after the Seventy-Five Percent Transaction was completed, Anthony Zelenka and BCC signed an Employment Agreement, which set forth the terms and conditions of Mr. Zelenka's employment with BCC. Additionally, Mr. Zelenka retained his position as manager of BCC. Later that

---

[1] Mr. Trosclair is not party to the subject suit or the underlying *NASDI* Lawsuit, and the record is unclear as to exactly for whom Mr. Trosclair worked. In briefing to this Court, Crosby Appellants identify Mr. Trosclair as "an employee of Crosby, not BCC."

year, on December 10, 2015, Mr. Trosclair contacted Mr. Emmett and inquired under what circumstances Mr. Zelenka could be terminated and what Mr. Zelenka's termination entailed for BCC. In particular, the termination of Mr. Zelenka triggered a buyout option in BCC's operating agreement, whereby the Zelenka Trusts had the right to sell their remaining twenty-five percent interest in BCC. Mr. Emmett responded to Mr. Trosclair's e-mail and provided advice. That same day, BCC terminated Mr. Zelenka.

### Final Transaction - The Twenty-Five Percent Interest in BCC

On January 6, 2016, the Tara E. Crosby Trust 2, the Allison Crosby Trust 2, the Lauren Guidry Trust, and the Aaron Guidry Trust, purchased the remaining twenty-five percent ownership interest in BCC from the Zelenka Trusts (hereinafter the "Twenty-Five Percent Transaction"). Mr. Emmett, at Mr. Trosclair's request, reviewed the sale document in January 2016: he recommended to Mr. Trosclair no changes to the document.

### Termination of Mr. Zelenka's Employment with BCC - Settlement Agreement, Waiver, and Release

After BCC terminated Mr. Zelenka and after Crosby Appellants and Vinton Crosby collectively became the owners of one hundred percent of BCC, there remained outstanding issues between Mr. Zelenka and BCC concerning Mr. Zelenka's termination and the *NASDI* Lawsuit. To resolve the outstanding matters, on March 4, 2016, Mr. Zelenka e-mailed Mr. Trosclair and offered three options regarding the risks and rewards of the then-pending *NASDI* Lawsuit. Mr. Zelenka presented the options as follows: (a) maintain the status quo, under which Mr. Zelenka retained substantially all of the risks and rewards of the *NASDI* Lawsuit; (b) Mr. Zelenka and BCC split the risks and rewards of the *NASDI* Lawsuit; or (c)

4

BCC assumes all risks and rewards of the *NASDI* Lawsuit. Mr. Trosclair forwarded this e-mail to Mr. Emmett and asked for Mr. Emmett's opinion on the options presented by Mr. Zelenka. Mr. Emmett advised Mr. Trosclair to choose option (b).

On April 6, 2016, Mr. Zelenka and Kurt Crosby as a member of BCC signed a "Settlement Agreement, Waiver and Release" (hereinafter "Settlement Agreement") to resolve issues associated with Mr. Zelenka's termination. One such issue was the *NASDI* Lawsuit. Within the Settlement Agreement was a section titled "LITIGATION PROCEEDS". This section stated, in pertinent part:

> With respect to the [*NASDI* Lawsuit], should any recovery be made by [BCC], [BCC] will issue a payment to [Mr.] Zelenka equal to one half of the net amount of any recovery made after payment of legal and litigation expenses incurred after January 1, 2015. In addition, [BCC] agrees that [Mr.] Zelenka's indemnity obligation to [BCC] arising out of the [*NASDI* Lawsuit] is hereby reduced to one half of any amount that [BCC] is or may be ordered to pay as a result of the litigation.

(Hereinafter "Fifty-Fifty Split Agreement"). The Fifty-Fifty Split Agreement altered the prior arrangement confected during the course of the Seventy-Five Percent Transaction, whereby Mr. Zelenka had retained substantially all risks and rewards from the *NASDI* Lawsuit. When the trial court in the *NASDI* Lawsuit ultimately cast BCC in judgment on March 7, 2018, BCC and Mr. Zelenka each had responsibility for half of the judgment per the terms of the Fifty-Fifty Split Agreement.

### The Kurt Crosby v. Waits, Emmett, Popp & Teich, L.L.C. Lawsuit

On February 12, 2019, Crosby Appellants and BCC, filed this legal malpractice suit against WEPT Appellees and the law firm's malpractice insurer. In the petition, Crosby Appellants alleged that WEPT Appellees negligently represented them in various transactions during their acquisition of BCC. In particular, Crosby Appellants alleged that they accepted Mr. Emmett's advice to

accept half of the risks and rewards for the *NASDI* Lawsuit. Crosby Appellants further alleged that, regarding the *NASDI* Lawsuit, they suffered from a substantial judgment on liability; a substantial judgment on attorneys' fees and costs; the public embarrassment of a large loss; additional attorneys' fees to mitigate the damages; and any ultimate settlement payment. On February 14, 2019, WEPT Appellees withdrew from representation of BCC in the *NASDI* Lawsuit because they had become adverse to BCC in the instant malpractice suit.

On March 22, 2019, WEPT Appellees filed a peremptory exception of no right of action and an alternative peremptory exception of no cause of action against Crosby Appellants. In support of the exceptions, WEPT Appellees argued that Crosby Appellants have no right of action to assert legal malpractice claims against WEPT Appellees because members of a limited liability company do not have a right of action to sue for damages to the company. In the alternative, WEPT Appellees argued that Crosby Appellants have no cause of action against WEPT Appellees because the petition failed to allege how any of Crosby Appellants' claims are direct, different, distinct, and independent of the claims for damages alleged by BCC.

Following a hearing, on July 1, 2019, the trial court issued a judgment granting the exception of no right of action in favor of WEPT Appellees and against Crosby Appellants. In its written reasons for judgment, the trial court wrote, in pertinent part:

> Shareholders and officers of a corporation do not have a personal right to sue in Louisiana to recover for acts committed against, or causing damage to the corporation. *See* [*Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*], [1995]-1630 (La. App. 4 Cir. 2/12/97), 689 So.2d 650.
>
> . . . .

> The petition seeks damages arising from [Waits, Emmett, Popp & Teich, L.L.C.]'s alleged legal malpractice in [Waits, Emmett, Popp & Teich, L.L.C.]'s representation of [BCC] in the [*NASDI*] [L]awsuit. The petition fails to set forth a basis of any right of action that the Crosby Plaintiffs suffered a direct loss distinct or independent from that of [BCC] in that representation.

In the July 1, 2019 judgment, the trial court granted Crosby Appellants leave to amend the petition within thirty days to cure any defects pursuant to La. C.C.P. art. 934.[2]

On July 31, 2019, Crosby Appellants and BCC filed a first amended petition for legal malpractice. The first amended petition added information about Mr. Emmett's communications with, and alleged representation of, Crosby Appellants during the Seventy-Five Percent Transaction, the Twenty-Five Percent Transaction, the negotiations surrounding Mr. Zelenka's termination, and the Settlement Agreement. Regarding the Settlement Agreement, the first amended petition alleged that "[Mr.] Emmett, on March 4, 2016, advised the Crosby [Appellants] to accept the option where they split liability and reward for the [*NASDI*] [L]awsuit . . . . The decision to accept this option by the Crosby [Appellants] was made almost completely upon the legal advice provided to the Crosby [Appellants] in writing by [Mr.] Emmett." Further, the First Amended Petition alleged that, in March 2019, Kurt Crosby guaranteed BCC's losses stemming from the *NASDI* [L]awsuit and sustained "a multi-million dollar loss" as a result.

---

[2] La. C.C.P. art. 934 provides, in pertinent part, that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court."

On June 1, 2020, WEPT Appellees filed a second peremptory exception of no right of action against Crosby Appellants. In pertinent part, WEPT Appellees argued in the second exception that "Crosby[] [Appellants] amended their Petition, but their amendments change nothing. The evidence still shows that [WEPT Appellees] did not engage in any relevant legal representation of the Crosby[] [Appellants] and that the Crosby[] [Appellants] are still improperly trying to sue for derivative losses that were allegedly sustained directly by co-plaintiff, [BCC]."

On November 16, 2020, the trial court held a hearing on the second exception. At the hearing, Mr. Emmett testified that he represented Crosby Appellants and Vinton Crosby in their acquisition of BCC; but Mr. Emmett testified that he completed all involvement related to the acquisition by January 2016. Mr. Emmett also testified about his involvement in the negotiations surrounding the Settlement Agreement, such as the March 4, 2016 e-mail conversation with Mr. Trosclair wherein Mr. Emmett recommended the course of action that ultimately became the Fifty-Fifty Split Agreement. Mr. Emmett testified that he represented BCC during the negotiations leading up to the Settlement Agreement and the Fifty-Fifty Split Agreement, not Crosby Appellants. He testified that BCC was "the only party [he] could be representing" because "the only party to the [S]ettlement [A]greement was BCC. The Crosby interests were not parties to this agreement . . . ." At the hearing, Kurt Crosby also testified and stated that the cost and judgment in the *NASDI* Lawsuit created cash flow issues for BCC. Kurt Crosby testified that loans from himself and from one of his businesses, Crosby Tugs, LLC, eliminated BCC's cash flow issues.

The trial court issued a judgment on December 10, 2020, which granted WEPT Appellees' second exception and dismissed all of Crosby Appellants'

claims. Further, the trial court did not grant leave to file any further amended pleadings as amendments would be futile. The trial court did not issue written reasons for judgment.

## STANDARD OF REVIEW

An appellate court reviews a trial court's ruling on an exception of no right of action *de novo*. "The exception of no right of action presents a question of law; thus, . . . appellate review of that exception is *de novo* and involves determining whether the trial court was legally correct in sustaining such exception." *Lestelle & Lestelle v. Campo Music Shopping Ctr. Condo. Ass'n*, 2021-0077, p. 4 (La. App. 4 Cir. 3/23/21), 315 So.3d 331, 334 (quoting *N. Clark, L.L.C. v. Chisesi*, 2016-0599, p. 6 (La. App. 4 Cir. 12/7/16), 206 So.3d 1013, 1017). "[I]f factual determinations have to be made in deciding if the plaintiff has a right of action, those factual determinations are evaluated for manifest error." *Rebel Distribs. Corp., Inc. v. LUBA Workers' Comp.*, 2013-0749, p. 10 (La. 10/15/13), 144 So.3d 825, 833, n. 8 (citing *Barnett v. Saizon*, 2008-0336, p. 6 (La. App. 1 Cir. 9/23/08), 994 So.2d 668, 672). *See also Exposition Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P.*, 2003-0580, p. 9 (La. App. 4 Cir. 3/10/04), 869 So.2d 934, 941 (citing *Abbott v. La. State Univ. Med. Ctr.-Shreveport*, 35,693, p. 5 (La. App. 2 Cir. 2/27/02), 811 So.2d 1107, 1110).

## DISCUSSION

On appeal, Crosby Appellants raise one assignment of error—that the trial court committed reversible error by granting WEPT Appellees' second peremptory exception of no right of action and dismissing all of Crosby Appellants' claims. Thus, the sole issue on appeal involves the correctness of the trial court's ruling in granting the second exception of no right of action. In reviewing this issue, we

begin with a discussion of the procedural articles governing proper party plaintiffs and no right of action.

*No Right of Action*

"Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." La. C.C.P. art. 681. The exception of "[n]o right of action, or no interest in the plaintiff to institute the suit" is a peremptory exception. La. C.C.P. art. 927(A)(6).[3] "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "Specifically, '[t]he function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.'" *Williams v. Buck Kreihs Marine Repair, LLC*, 2021-0001, p. 4 (La. App. 4 Cir. 2/24/21), 314 So.3d 1040, 1043 (quoting *Abadie v. Arguelles*, 2019-0749, p. 3 (La. App. 4 Cir. 2/19/20), 292 So.3d 961, 963). "[T]he exception of no right of action assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation." *Id.* (quoting *Van Meter v. Gutierrez*, 2004-0706, p. 7 (La. App. 4 Cir. 2/16/05), 897 So. 2d 781, 786). "The defendant-exceptor has the burden of proving the exception of no right of action." *Williams*, 2021-0001, p. 4, 314 So.3d at 1044 (quoting *Abadie*, 2019-0749, p. 3, 292 So.3d at 964). "In reviewing a trial court's ruling on an exception of no right of action, an appellate court 'begins with an examination of the pleadings.'" *N. Clark, L.L.C. v. Chisesi*, 2016-0599, p. 6 (La. App. 4 Cir.

---

[3] The Louisiana Legislature amended La. C.C.P. art. 927 in 2021, but the amendment is to La. C.C.P. art. 927(B), not La. C.C.P. art. 927(A).

12/7/16), 206 So.3d 1013, 1017 (quoting *Gisclair v. La. Tax Comm'n*, 2010-0563, p. 2 (La. 9/24/10), 44 So.3d 272, 274).

Beginning with the pleadings, Crosby Appellants' petition and first amended petition assert a legal malpractice cause of action against WEPT Appellees. "To establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence." *Ewing v. Westport Ins. Corp.*, 2020-00339, p. 8 (La. 11/19/20), 315 So.3d 175, 180 (citing *Costello v. Hardy*, 2003-1146, p. 9 (La. 1/21/04), 864 So.2d 129, 138). Because "the exception of no right of action assumes that the petition states a valid cause of action[,]" we assume that Crosby Appellants' petition and first amended petition state a valid cause of action for legal malpractice, i.e., an attorney client relationship, negligent representation, and loss due to the negligent representation. *Williams*, 2021-0001, p. 4, 314 So.3d at 1043 (quoting *Van Meter v. Gutierrez*, 2004-0706, p. 7 (La. App. 4 Cir. 2/16/05), 897 So.2d 781, 786). As the exception of no right of action also "questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation[,]" we must next determine if Crosby Appellants are proper party plaintiffs with standing and a legal interest to bring this legal malpractice suit. *Id.*

***Proper Party Plaintiffs***

To determine whether Crosby Appellants are proper party plaintiffs, we must address whether shareholders and officers of a corporation have a personal right to sue to recover for acts causing damage to the corporation. "A member shall have no interest in limited liability company property." La. R.S. 12:1329. In interpreting La. R.S. 12:1329, Louisiana courts have held that "[s]hareholders and officers of a corporation . . . do not have a personal right to sue in Louisiana to

11

recover for acts committed against, or causing damage to[,] the corporation." *Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 1995-1630, p. 7 (La. App. 4 Cir. 2/12/97), 689 So.2d 650, 654 (citing *Bolanos v. Madary*, 609 So.2d 972, 977 (La. App. 4th Cir. 1992)). Similarly, the federal court for the Eastern District of Louisiana has observed that "Louisiana courts have unanimously interpreted [La. R.S. 12:1329] to bar an individual member of a limited liability company from pursuing an action for damages to the property of the limited liability company." *Kelly v. Porter, Inc.*, 687 F. Supp. 2d 632, 636 (E.D. La. 2010) (citing *N.E. Realty, L.L.C. v. Misty Bayou, L.L.C.*, 40,573 (La. App. 2 Cir. 1/25/06), 920 So.2d 938; *Van Meter v. Gutierrez*, 2004-0706, 897 So.2d 781, 786; *Metro Riverboat Assocs., Inc. v. Bally's La., Inc.*, 1999-0983 (La. App. 4 Cir. 1/24/01), 779 So.2d 122; *Hinchman v. Oubre*, 445 So.2d 1313 (La. App. 5th Cir. 1984)). Rather "a shareholder may only sue to recover losses to a corporation secondarily through a shareholder's derivative suit." *St. Bernard Optical Corp. v. Schoenberger*, 2005-0548, p. 6 (La. App. 4 Cir. 1/25/06), 925 So.2d 604, 608 (citing *Pittman v. Beebe*, 1995-1342 (La. App. 3 Cir. 3/6/96), 670 So.2d 761). In *Ahmed v. Downman Dev., L.L.C.*, this Court explained, "a person who conducts business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation." 2017-0114, p. 7 (La. App. 4 Cir. 12/28/17), 234 So.3d 1111, 1117 (quoting *Hinchman v. Oubre*, 445 So.2d 1313, 1317 (La. App. 5th Cir. 1984)).

In *Van Meter*, this Court addressed whether shareholders and officers of a corporation have a personal right to sue to recover for acts causing damage to the corporation. In that case, Dr. and Mrs. Van Meter and Dr. Adrian James invested through their wholly owned limited liability companies in the Christian

12

Community Medical Center's (CCMC) proposed purchase of the St. Claude Medical Center. *Van Meter*, 2004-0706, pp. 1-2, 897 So.2d at 783. When the purchase failed to come to fruition and they did not receive their investment back, the Van Meters, Dr. James, and their respective LLCs filed suit against their alleged attorney, two individuals who recruited investors, a mortgage company, and CCMC. *Id.* In pertinent part, the two individuals who recruited investors and CCMC filed an exception of no right of action that the trial court granted and this Court affirmed, stating:

> **The proper party plaintiffs, that is, those who may assert a maintainable right of action against the appellee(s) for losses suffered by the corporations are the juridical entities themselves as they have sustained actual and appreciable monetary losses through the failure of the investment transaction.** Therefore, we find that the exception of no right of action filed by named appellees, the CCMC[] [and the individuals who recruited investors] was properly granted since the limited liability companies are the proper parties to pursue actions for damages against the named appellees, and not the Van Meters nor Dr. James.

*Van Meter*, 2004-0706, p. 8, 897 So.2d at 786 (alteration and emphasis in original). The *Van Meter* court concluded that the proper party plaintiffs to assert a right of action for losses suffered by the corporations are the juridical entities themselves as they have sustained actual and appreciable losses. *Id.*

Crosby Appellants allege that they suffered damages related to the *NASDI* Lawsuit because they accepted Mr. Emmett's advice to accept half of the risks and rewards for the *NASDI* Lawsuit per the terms of the Fifty-Fifty Split Agreement in the Settlement Agreement. However, Mr. Zelenka and Kurt Crosby as a member of BCC are the only parties that signed the Settlement Agreement, which contains the Fifty-Fifty Split Agreement. Thus, responsibility for half of the judgment in the *NASDI* Lawsuit rested with BCC, not Crosby Appellants; and any alleged legal

malpractice that occurred in the *NASDI* Lawsuit resulted in damages to BCC, not Crosby Appellants. "Shareholders and officers of a corporation . . . do not have a personal right to sue in Louisiana to recover for acts committed against, or causing damage to the corporation." *Joe Conte Toyota*, 1995-1630, p. 7, 689 So.2d at 654. Crosby Appellants have failed to prove a personal right to recover. For a "shareholder [to have] a personal right to recover, the jurisprudence requires an injury that is 'special' or unique to the shareholder." *Paul Piazza & Son, Inc.*, 2011-0548, pp. 6-7 (La. App. 5 Cir. 12/28/11), 83 So.3d 1066, 1070. As shareholders of BCC, Crosby Appellants do not have a personal right to sue WEPT Appellees for any alleged legal malpractice in the *NASDI* Lawsuit because any alleged legal malpractice resulted in damages for BCC, not Crosby Appellants. *Id.*; *Van Meter*, 2004-0706, p. 8, 897 So.2d at 786. We find the trial court did not err in granting WEPT Appellees' second exception of no right of action.

Next, we address Kurt Crosby's claim that he sustained "a multi-million dollar loss" because he guaranteed the judgment against BCC stemming from the *NASDI* Lawsuit. Under Louisiana law, "[a] guarantor of corporate obligations . . . has no standing to sue for injury to the corporation. . . . Likewise, such a guarantor has no standing to sue individually for personal losses incurred as guarantor . . . ." *Joe Conte Toyota*, 1995-1630, p. 7, 689 So.2d at 654. This is because a guarantor "has not incurred damages separate and independent of the damages allegedly suffered by" the corporation. *Id.*, 1995-1630, p. 7, 689 So.2d at 653.

When Kurt Crosby signed the Guarantor Agreement in March 2019, he agreed to guarantee BCC's half of the judgment in the *NASDI* Lawsuit. A guarantor of corporate obligations, such as Kurt Crosby, has no standing to sue for injury to the corporation. *Joe Conte Toyota*, 1995-1630, p. 7, 689 So.2d at 653-54.

Even if BCC suffered damages stemming from WEPT Appellees' alleged malpractice in the *NASDI* Lawsuit, Kurt Crosby does not have a right of action as guarantor of BCC's half of the judgment from the *NASDI* Lawsuit. *See Joe Conte Toyota*, 1995-1630, p. 7, 689 So.2d at 654. Kurt Crosby "has no standing to sue for injury to" BCC and "has no standing to sue individually for [his] personal losses incurred as guarantor" because he did not suffer "damages separate and independent of the damages allegedly suffered by" BCC. *Id.* Accordingly, we find the trial court also did not err in granting WEPT Appellees' second exception of no right of action as it relates to Kurt Crosby and the Guarantor Agreement.

In sum, we affirm the trial court's judgment granting WEPT Appellees' second peremptory exception of no right of action and dismissing Crosby Appellants' claims.

## DECREE

For the foregoing reasons, the trial court's December 10, 2020 judgment, sustaining the second peremptory exception of no right of action, is affirmed.

**AFFIRMED**